The order appealed from should be affirmed and judgment absolute ordered in favor of the plaintiff upon the stipulation, with costs.

All concur (ANDREWS, Ch. J., and BARTLETT, J., on the ground of non-user), except PECKHAM, J., who dissents upon the ground that there was proof sufficient of user, and that the action of the defendant did not fairly tend to enhance the price of milk to the consumer.

Order affirmed and judgment accordingly.

---

ELIZUR G. WEBSTER et al., Respondents, *v.* KINGS COUNTY TRUST COMPANY, Appellant.

As a general rule a contract to convey land free from incumbrance is not satisfied by the tender of a conveyance, subject to unsatisfied and unpaid mortgages, although they are due and payable and the vendee is permitted to deduct from the purchase money the amount of such liens.

The vendee, however, may dispense with the duty resting upon the vendor to pay the mortgages and procure their satisfaction, and by his conduct put himself in a position where an allowance out of the purchase money will be all he can equitably demand.

In an action brought to compel specific performance of a contract for the purchase of certain real estate by defendant, situate in the city of Brooklyn, these facts appeared: The premises formerly belonged to a savings bank. In an action brought by the attorney-general in the name of the People to sequestrate the property of the bank, an order was made without notice to the attorney-general or the depositors, directing the sale of the real estate at public auction, and providing that any of the trustees of the bank might become purchasers at the sale. Plaintiffs, who were such trustees, became the purchasers, received the usual deed and went into possession. After the contract with defendant was executed, an order was made in said action, on motion to the bank and the attorney-general, confirming the sale. Thereafter a depositor applied for leave to intervene in the action, and to have the sale set aside on the ground that the order directing the sale and permitting the trustees to purchase was invalid. The application was heard on the merits

"as fully to all intents and purposes as though the order of confirmation * * * had not been made," and the court decided that the proceedings and sale were valid and binding on all the parties interested, which order was affirmed on appeal (138 N. Y. 658). *Held*, that the decision settled the validity of the title, upon the points involved, as to all the world; also that the bank was not a necessary party to that proceeding.

By the contract the plaintiffs agreed to convey "free from all incumbrances;" at the time of its execution there were mortgages on the premises then due and unsatisfied, and which still remain liens thereon. The deed tendered contained full covenants on the part of the vendors, without mention of the mortgages; there was evidence, however, justifying a finding that the mortgages were kept alive at the instance of defendant, and that it waived a literal performance of the contract in respect to incumbrances. The judgment below permits defendant to deduct from the purchase money the amount of the mortgages, and to accept the conveyance, and enjoins it from asserting that the existence of the mortgages constitutes a breach of said covenant. *Held*, that the judgment was proper.

Defendant objected that the building upon the premises encroaches upon the street line. It appeared that the granite foundation of the water table of the building extends five inches and the door posts one foot three inches outside of the building line, which is the street line. It did not appear that the city authorities consented to this encroachment; but so far as appeared they had not objected thereto. The building had been erected more than twenty years, and by the almost uniform usage in the city in constructing buildings of like character, the water tables and entrances are made to project a little beyond the building line. It also was found that defendant, after making the contract, waived the objection. *Held*, that it was untenable here.

A., one of the original plaintiffs, died after the trial. The deed tendered on the trial, which was duly executed and acknowledged by A. and the other plaintiffs, was placed under the control of the court in the hands of the clerk. *Held*, that the death did not abate the action, nor was it necessary that a new conveyance from his heirs should be procured; that the delivery to the clerk was a good delivery in *escrow*, which was not defeated by the death.

Reported below, 80 Hun, 420.

(Argued February 26, 1895; decided March 12, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made at the July term, 1894, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel a specific performance by defendant of a contract to purchase certain premises known as the Long Island Savings Bank of Brooklyn, by which contract plaintiffs agreed to convey said premises to defendant by a full covenant warranty deed, free from all incumbrances. Defendant refused to accept a deed on the ground of defect in plaintiffs' title.

The facts, so far as material, are stated in the opinion.

*George V. Brower* for appellant. The plaintiffs were not seized in fee simple and could not convey by a proper deed of warranty on the 10th day of March, 1893, and protect the purchaser from claims of depositors. (Girard on Titles, 284, 285 ; *Steinberger* v. *Dickenson,* 9 Barb. 516 ; *Abbott* v. *A. R. Co.,* 33 id. 579 ; *Conger* v. *Ring,* 11 id. 356 ; *Jewett* v. *Miller,* 6 Seld. 402 ; *Baden* v. *Storms,* 94 N. Y. 269 ; *Huebbel* v. *Newbury,* 53 id. 98 ; *Hoyle* v. *P. & M. R. R. Co.,* 54 id. 314 ; *People* v. *M. Bank,* 35 Hun, 97 ; *People* v. *O. B. S. Brokers,* 92 N. Y. 98 ; *Munson* v. *S. G. & C. R. R. Co.,* 103 id. 58 ; *Schole* v. *Nichols,* 101 id. 167 ; *Fulton* v. *Whitney,* 66 id. 556 ; *Tory* v. *Bank of Orleans,* 9 Paige, 661 ; *Epps* v. *Van Epps,* Id. 237 ; *Abbott* v. *James,* 111 N. Y. 673 ; *Hayes* v. *Nourse,* 114 id. 595 ; *Werz* v. *Rademacher,* 120 id. 6.) Even if the proceedings were regular and the trustees were seized in fee simple and could convey a valid title free from the trust, the premises were subject to two mortgages on the 10th day of March, 1893, the time fixed for closing the contract. (*Hinckley* v. *Smith,* 51 N. Y. 21 ; *Judson* v. *Wass,* 11 Johns. 525 ; Fry on Spec. Perf. §§ 365–368 ; *Horanger* v. *Morris,* 34 Barb. 311.) The judgment as entered in this action is erroneous. (Code Civ. Pro. §§ 758, 762, 764, 765.)

*John L. Hill* for respondents. Judge Landon's order of confirmation was clearly right, because the original Savings Bank Act of 1875 (Chap. 371, § 44), which was in force when the People's suit was instituted, is the same, so far as the

question of jurisdiction extends, as the like act of 1882 (Chap. 409, § 278), which was in force when the order of confirmation was made. (*People* v. *U. S. Inst.*, 64 Hun, 434; 133 N. Y. 689; *In re N. S. Inst.*, 28 N. J. Eq. 552.) The other technical objections to specific performance are of no significance. They were waived, if indeed they ever had any force. (*Johnson* v. *Oppenheim*, 55 N. Y. 291.) The question is not one of marketable title, but of legal and valid title, which was settled in the special way which the parties agreed upon. (*Baylis* v. *Steinson*, 23 J. & S. 232.) The consent respecting the street railway motive power is too insignificant to receive discussion. (See Cooley on Const. Law [2d ed.], 354.) The form of the decree was proper, *i. e.*, for balance of purchase money. No other judgment could have been entered on the vendor's suit for specific performance. (2 Abb. New Forms, 901, par. 1741; *Loeber* v. *Mayor, etc.*, 5 Abb. Pr. 424; 26 Barb. 262; *Leonard* v. *C. S. N. Co.*, 84 N. Y. 48.)

Andrews, Ch. J. (1) The main objection to the title, and the only one originally made, was that the vendors whose title was acquired under the sale at public auction, December 17, 1884, were disabled from purchasing by reason of the fact that they were at the time trustees of the Long Island Savings Bank. The order made in the People's action, November 13, 1877, brought to sequestrate the property of the savings bank and for the appointment of a receiver, was made after hearing all the parties interested, including the depositors of the bank. That order denied the application for the appointment of a receiver, and permitted the trustees of the bank to remain in control and management of the property of the corporation for the purpose of selling and converting the assets and paying the depositors according to the terms of the order and the proposition of the trustees, to which depositors representing ninety-four per cent of the deposits had consented. The order left the action for sequestration pending and operated to suspend for the time being the taking possession and the administra-

tion of the assets by the court. From time to time orders were granted by the court upon the application of the bank and its trustees *ex parte*, without notice to the attorney-general or the depositors, extending the time for completing the liquidation. But on the 11th day of October, 1884, the court on the application of the savings bank and the trustees directed that the real estate of the bank should be sold at public auction on giving public notice according to the law and practice of the court respecting judicial sales, on or before December 15, 1884 (subsequently changed to Dec. 17, 1884), and the order declared that " either or any of the parties to the action, or either or any of the trustees of said defendant, the Long Island Savings Bank of Brooklyn, may become a purchaser at such sale." On the sale Webster, Stryker and Agar became the purchasers of the lot on which the bank building was located and received the usual deed and went into possession thereunder, taking the rents and profits, and on the 19th of January, 1893, entered into a contract with the defendant, the Kings County Trust Company, for the sale of the property so purchased by them to that company, the specific performance of which is the subject of this action. No order for the confirmation of the sale of December 17, 1884, was made until May 2, 1893. Upon that day application for confirmation was made by the purchasers to Judge LANDON at Special Term (before whom all the prior proceedings had been taken) on notice to the savings bank and the attorney-general, and the court made an order confirming the sale, reserving the right of any depositor of the bank whose dividends had not been paid pursuant to the terms of settlement, to enforce the liability of the purchasers on their bond filed November 14, 1877. Thereafter on the 17th day of Nov., 1893, one Hanna, a depositor in the savings bank who had received but eighty per cent of his claim, applied to the Special Term in his own behalf and in behalf of all other depositors, for leave to intervene in the People's action and to have the sale of Dec. 17, 1884, and the subsequent proceedings set aside on the ground that the order of Oct. 11, 1884,

directing the sale and permitting the trustees to purchase was invalid. The petition set forth the history of the prior litigation and proceedings and that the several orders were made without notice; that the sale was for an inadequate price; that the trustees were incapacitated from purchasing for themselves, and it alleged circumstances which the petitioner claimed excused *laches* in making the application. The petition with the affidavit and the order to show cause were served on the attorney-general, the attorney who appeared for the savings bank in the action, and on its vice-president. On the matter coming on to be heard before Judge LANDON, May 20, 1893, he heard the application on the merits, "as fully to all intents and purposes, as though the order of confirmation of May 2, 1893, had not been made," and he found that the applicant was not chargeable with *laches* in making his application, and having considered the matters as though presented *de novo*, he decided that the proceedings and sale were valid and binding upon all the parties interested, including the depositors. He made an order denying the application, except that it permitted the petitioner to intervene in the action in behalf of himself and of all other depositors and to appeal from the order of confirmation "with the same force and effect as if he had been allowed to intervene and had actually intervened and appeared and opposed said motion on the merits." From this order of May 20, 1893, Hanna appealed to this court. On the argument the question of the validity of the sale and the right of the trustees to purchase were fully presented, and this court affirmed the order of Judge LANDON (138 N. Y. 658). The question as to the validity of the sale is concluded by the decision on the appeal from the order. The court in affirming the order below necessarily adjudged that the clause in the order of October 11, 1884, permitting the trustees to purchase, was valid, and that the sale was in all respects legal and binding. All the parties interested in the question were before the court in that proceeding, the People, the savings bank, the depositors and the purchasers. The Kings County Savings Bank was

not a party nor was it necessary that it should have been made a party. The decision bound the title upon the points involved as to all the world. The main objection of the defendant to completing the purchase is, therefore, unfounded.

(2) By the contract the premises were to be conveyed "free from all incumbrance." At the time of the contract there were unsatisfied mortgages on the premises amounting to about $80,000, which were then due and which still remain liens on the land. The deed of the vendees tendered on the trial contained full covenants on the part of the vendors, making no mention of the mortgages. The judgment permits the defendant to deduct from the purchase money the amount of the mortgages and to accept the conveyance, and enjoins the defendant from asserting that the existence of the mortgages constitutes a breach of the covenants in the deed. We entertain no doubt that in general a contract to convey land free from incumbrance would not be satisfied by a tender of a conveyance subject to unsatisfied and unpaid mortgages, although the purchaser was permitted to deduct an equivalent from the purchase money. The vendor under such a contract cannot impose upon the purchaser the burden of paying the mortgages and procuring their satisfaction, even though the mortgages are presently due and payable. But the purchaser may dispense with this duty resting on the vendor, and by his conduct put himself in a position where an allowance out of the purchase money will be all that he can equitably demand. The evidence in this case justifies the conclusion that the mortgages were kept afoot at the instance of the defendant and that the defendant waived a literal performance of the contract in respect to the incumbrances.

(3) It is objected that the building encroaches upon the street line. There is evidence in the case tending to show that the granite foundation of the water table extends five inches outside of the building line, and that the door posts extend over the building line on Fulton street one foot and three inches. It does not appear whether the city consented to this construction. The building has been erected more than

twenty years, and, so far as appears, neither the municipality nor any of its officers has ever objected to the alleged encroachment. It was shown that the almost uniform usage in Brooklyn in the construction of buildings of like character is to project the water table and the entrance a little beyond the building line. The building in question was located in the vicinity of the most valuable business property in the city· The main building is concededly on the street line. It is quite probable that the building line in this vicinity is distinctly marked by the general situation and the uniformity of location of the main walls of the buildings, and that a purchaser, by observation, without any formal survey, would be able to discover any projection beyond that line. The question may arise whether, under such circumstances, a purchaser, under a contract which describes the premises by metes and bounds, which accurately defines his property, can be excused from performance because of a slight projection of the water table or stoop front of the building beyond the street line, where such projection is visible upon inspection. We need not consider that question now, because we are of the opinion that this very technical objection is answered by the general finding that the purchaser, after the contract, waived all objections to the title, except the main objection first considered, and there is the further technical answer that, in the absence of any statement in the record that it contains all the evidence, we must presume in support of the judgment and findings that there was evidence sufficient to sustain the judgment.

(4) The objection that the closing of the contract was extended only to March 10, 1893, and that the vendors could not give a good title at that time, and that the defendant then formally rejected the title tendered and thereby the contract came to an end, is not well taken. The dealings between the parties after that date clearly show that the declination of the title at that time by the defendant was tentative merely and that both parties proceeded upon the understanding that if the question of the right of the trustees of the savings bank

to purchase should be judicially and affirmatively settled in the contemplated proceedings, the sale would be consummated.

(5) The death of Agar after the trial did not abate the suit, nor was it necessary that a new conveyance of his interest in the property from his heirs should be procured. The deed tendered on the trial and placed under the control of the court in the hands of the clerk, duly executed and acknowledged by Agar and the other plaintiffs, was a good delivery in escrow, which was not defeated by his subsequent death. (*Ruggles* v. *Lawson*, 13 Jo. 285; *Hunter* v. *Hunter*, 17 Barb. 25.) The surviving plaintiffs could continue the action in their own names to recover the unpaid purchase money, and on recovery they would hold the share of Agar in trust for his representatives.

We think the judgment is right and it should be affirmed, with costs.

All concur.

Judgment affirmed.