ELTERMAN v. HYMAN.

(Supreme Court, Appellate Division, First Department.   December 2, 1910.)

1. VENDOR AND PURCHASER (§ 337*)—EXECUTORY CONTRACT FOR SALE OF LAND —LIEN OF PURCHASER FOR MONEY PAID.

The purchaser under an executory contract for sale of land has a lien on the premises for the amount paid pursuant to the contract which he may enforce in equity if he was ready to perform and the vendor was unable to perform.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 985–990; Dec. Dig. § 337.*]

2. VENDOR AND PURCHASER (§ 133*)—PERFORMANCE OF CONTRACT.

Where an executory contract for the sale of land provided that part of the purchase price should be paid by taking up certain mortgages of fixed amounts and with the usual clauses, and due on certain dates, and as a matter of fact there were no mortgages on the property for the sums stated, and the mortgages on the property were due at different dates from those stated in the contract, and contained clauses of an unusual character, making the mortgage due on demolition of any building on the premises, the purchaser was not required to take the title tendered; it not being that contracted for.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 133.*]

3. VENDOR AND PURCHASER (§ 337*)—BREACH OF EXECUTORY CONTRACT—REMEDY OF PURCHASER.

Where a vendor, who, by executory contract, undertook to sell land, taking one payment from the purchaser, did not have title thereto, but merely a contract for title and tendered a title not in accordance with the contract, the purchaser, in refusing to accept such title, could sue in equity to impress upon the land a lien for the amount of the payment on the price for a sale of the premises to satisfy the lien and a deficiency judgment, if need be, though the vendor never took title under his contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 337.*]

4. ACTION (§ 25*)—WAIVER OF RIGHT.

The action having been regularly placed on the Special Term calendar, and no objection having been made to its being tried at Special Term, and the defendant not having pleaded in his answer that plaintiff had an adequate remedy at law, and not having made the objection at the trial, and no request nor suggestions having been made that the issues be sent to a trial term for a jury trial, plaintiff could recover, even though the action be regarded as one at law, as the summons was not served until after tender made and default by defendant.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 25.*]

Appeal from Special Term, New York County.

Action by Abraham Elterman against Jacob Hyman.   Judgment of dismissal, and plaintiff appeals.   Reversed, and new trial granted.

See, also, 117 App. Div. 519, 102 N. Y. Supp. 613; 118 App. Div. 908, 103 N. Y. Supp. 1124.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

Edward W. S. Johnston, for appellant.
Abraham I. Spiro, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

LAUGHLIN, J.  This is an action by a vendee of two adjoining parcels of real estate in the borough of The Bronx, N. Y., to impress upon the land a lien for $1,900, being the amount of the down payment, $1,500, and the reasonable cost of examining the title, and for a sale of the premises to satisfy the lien and for a deficiency judgment if need be; and in the event that plaintiff should be unable to obtain a decree for a lien and for the sale of the premises to satisfy it, he demands judgment for said amount against defendant personally.  Plaintiff, in his complaint, predicates his right to the relief demanded on a breach of an executory contract in writing made by the parties on the 9th day of November, 1904, by which defendant agreed to sell and convey the premises to the plaintiff, on the terms therein specified, in fee simple free from all incumbrances except certain enumerated incumbrances.  It was expressly provided that the deed should be delivered at the office of the attorneys for defendant at 2 p. m., on the 9th day of January thereafter.

The title tendered was rejected by plaintiff upon the grounds that it was not marketable, and was not otherwise in accordance with the contract in that the incumbrances were materially different from those subject to which he agreed to take title, and that there were also other incumbrances.  The defendant did not take title to the premises himself, and never tendered or was in a position to tender better title than that tendered at the time the parties met to close the contract; and maintaining that the title was both marketable and in accordance with the contract, he set up a counterclaim herein for specific performance, and therein alleged that he was still ready, able, and willing to perform.

The contract, after containing a recital that it was understood that the defendant was not the owner of the premises, and that he merely had a contract for the purchase thereof, provides as follows:

"And if the title to either of the parcels above described should prove unmarketable the deposit herein made shall be returned to the said Elterman, and this contract shall be canceled and annulled without any further damages by either party as against the other, provided notice of the unmarketability of the title to either of the said parcels is given by the said Elterman to the said Hyman or his attorneys, not later than December 27, 1904.  Should the title to either of said parcels prove unmarketable the same shall not be ground for rejecting the title to the other parcel, but the purchase price as well as the amounts to be paid on closing, and the amount of the mortgage shall be adjusted proportionately."

On the 27th day of December, 1904, and within the time provided therefor in the contract, plaintiff gave notice in writing to defendant and to his attorneys that the title to both parcels described in the contract, to which reference was made, and briefly described in the notice as well, "is at this date unmarketable, and not according to the contract."  The defendant did not then or at any time thereafter acquiesce in either claim, or elect to cancel the contract or return the down payment and thus terminate his liability under the contract as he was at liberty to do on the claim being made by plaintiff that the title was unmarketable.  The same day the attorneys for plaintiff received a letter from the attorneys for defendant request-

ing that they communicate with the attorneys for defendant at once, specifying in detail "in what respects you claim the title to be unmarketable." The next day the attorneys for defendant requested in writing the attorneys for plaintiff to let them know "at once what the alleged defects are in the title" in question. The attorneys for plaintiff subsequently, on December 31st, verbally promised a representative of the attorneys for defendant that they would specify and communicate the objections as requested and had previously made a like promise by the telephone; but on January 3, 1905, their client received a notice in writing from the defendant as follows:

> "New York, January 3rd, 1904.
>
> "Mr. Elterman, New York, N. Y.
>
> "Dear Sir: We received a letter from your attorneys Messrs. Cohen Bros. informing us that the lots on Stebbins Ave. are unmarketable, but find upon investigation that they are marketable, and wish to inform you that title is to be taken on the 9th of this month. Kindly let me know whether you will be ready on that day and oblige,
>
> "Yours truly,                    Jacob Hyman."

Nothing further transpired between the parties until January 9, 1905, the day on which the contract was to be closed, when about an hour before the time set for closing plaintiff's attorneys received a letter from the attorneys for defendant referring to the contract and to the hour and place therein prescribed for closing it, and requesting that plaintiff and his attorneys meet defendant and them at the same hour at the office of Shapiro & Shapiro, No. 320 Broadway, for the reason that "the closing of the original contract held by" defendant was to be at that time and place. This request was complied with and the parties met accordingly. The wife of the defendant had not executed the deed. She was not present, and did not arrive until about 5 o'clock. The parties waited for her an hour, and then they proceeded to the business for which they had come together. The attorney for plaintiff stated the objections to the title as it existed on December 27, 1904, and also as it then presently existed. The objections were taken down in shorthand and afterwards written out. We do not deem it necessary to consider the merits of all the objections.

One of the parcels of land embraced in the contract, and therein designated the first parcel, was described as having a frontage of 150 feet on Stebbins avenue and extending in depth the same width easterly therefrom 100 feet, and the other parcel bounded the first one on the north and was of the same depth but had a frontage of only 50 feet on Stebbins avenue. The consideration to be paid was $31,750, of which $1,500 was required to be and was paid at the time the contract was executed. It was provided in the contract that $10,000 of the purchase price was to be paid "by taking the first parcel above described subject to a mortgage in the said amount due on or about December 17, 1906, or on thirty days' notice after the first year, said mortgage bearing interest at the rate of 5 per centum per annum, containing the usual clauses, also a mortgage tax clause," and that $3,000 of the purchase price should be paid "by taking said premises subject to a mortgage in the said sum on the first parcel above de-

scribed due on or before December 17th, 1906, bearing interest at the rate of 5 per centum and containing the same clauses as the first mortgage above described." There was no mortgage on record for $10,000 on either parcel. There was one mortgage on *one half* of the *first parcel* for $5,000 and another on the other half for like amount. These mortgages were executed after the contract between the plaintiff and defendant was made and on the 29th day of December, 1904, and instead of being due in December, 1906, as provided in the contract, they were due December 27, 1907, or on sixty days' instead of thirty days' notice after the first year. They also contained clauses as follows:

"It being expressly understood and agreed that the mortgagor or any subsequent owner of the premises described herein shall upon request, made either personal or by mail, certify in writing to the mortgagee or any proposed assignee of this mortgage, the amount of principal and interest that may be due on this mortgage, and upon the failure to furnish such certificate after the expiration of six days in case the request is made personal or after the expiration of thirty days after the mailing of such request in case the request is made by mail, this mortgage shall become due at the option of the holder thereof. * * * In case of the actual or threatened demolition or removal of any building erected upon the said premises, the whole of said principal sum shall become due and payable at the option of the said mortgagee. * * * That if default shall be made in the payment of the principal sum mentioned in the condition of the said bond, or of the interest which shall accrue thereon, or of any part of either, at the respective times herein specified for the payment thereof, the said mortgagee shall have the right forthwith, after any such default, to enter upon and take possession of the said mortgaged premises, and to let the said premises, and receive the rents, issues, and profits thereof, and to apply the same, after payment of all necessary charges and expenses, on account of the amount hereby secured, and said rents and profits are in the event of any such default hereby assigned to the mortgagee."

The second mortgage on the first parcel for $3,000 instead of being subject to one mortgage for $10,000, as provided in the contract was subject to these two mortgages, and although according to the contract it was to contain the same clauses as the mortgage for $10,-000, it did not contain the clauses which were in the $5,000 mortgages, and instead of being due on or before December 17, 1906, it was to fall due on or before December 29, 1906. The objections to the title tendered were taken on the express grounds, among others, that these two mortgages were not according to the contract in the particulars herein specified. The owners of these mortgages were not there and no one with authority to represent them was present. Some of the other objections which were made to the title were removed, but the objections herein stated with respect to the $5,000 mortgages were not removed. According to the testimony of the attorney for the plaintiff there was no effort to attempt to remove these objections nor was there any request for a postponement with a view to having them obviated if possible. It appears that the defendant desired that the plaintiff take title direct from the owners but the plaintiff insisted, as was his right under the contract, to take title from the defendant and thus to hold the defendant liable to him. The attorney for the plaintiff after stating his objections and finding

as he anticipated that the defendant was unable to meet many of them telephoned his office and directed that the summons, verified complaint, and lis pendens herein which had that day been prepared by him be filed, and accordingly they were filed, in the office of the county clerk of New York county about five minutes later, and at 3 :44 p. m. that day. Testimony was given on the part of the defendant tending to show that an offer was made by the attorney for defendant to endeavor to obviate the objections with respect to the $5,000 mortgages, provided plaintiff would consent to a postponement of the closing for two or three days to enable him to see mortgagees or owners of the mortgages. The evidence on this point therefor was controverted, and would sustain the finding that the attorney for the defendant made such a suggestion or request. It does not appear that any reply was made thereto by plaintiff or his attorney, other than a statement that he stood on his objections which was evidently made with respect to a statement by the attorney for defendant, to the effect, that all of the objections were frivolous, or that there was any conduct on the part of the plaintiff or his attorney with respect to the request that constituted a refusal to grant it. On the contrary it clearly appears that if such a request was made it was in effect abandoned or withdrawn, for the attorney for the defendant made a formal tender of title such as his client (defendant) had, and demanded performance on the part of the plaintiff, and, as already observed, the answer sets up good title, and it is therein alleged "that on the said 9th day of January, 1904, at the hour and place mentioned in said agreement, the defendant tendered to the plaintiff a deed of said premises pursuant to and in accordance with the terms of said agreement above, and demanded payment of the balance of the purchase money, and the plaintiff then refused and ever since has refused to accept said deed or pay the balance of said purchase money according to said agreement." About 5 o'clock after defendant's wife executed the deed there was a formal tender of performance on the part of each, and plaintiff stood upon his objections and rejected the title tendered. Just before this the owners who had a contract to convey to Levy tendered title to him, and Levy, who had a contract with defendant, tendered title to him, but no title actually passed. After plaintiff and his attorney departed, negotiations between the other parties were postponed for four days and then broken off, and actions were commenced by each vendee against his vendor.

The learned trial justice based his dismissal of the complaint upon the failure and refusal on the part of the plaintiff to consent to postponing the closing of the contract to enable the defendant to remove the objections with respect to said mortgages. We are of opinion that this was error and it cannot be sustained, not only because there is no evidence of such refusal, but for other reasons as well.

The Court of Appeals on a former appeal herein held that the vendee under an executory contract for the purchase of land has a lien on the premises for the amount paid pursuant to the contract which he may enforce in equity if he was ready to perform and the vendor was unable to perform. Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862.

The material facts as to whether this action could be maintained in equity were the same in the record on the former appeal as in the record now before the court, and it must therefore be assumed that, notwithstanding the fact that the defendant did not have title at the time the contract was made and at the time the action was commenced, the plaintiff had a lien upon the interest of the defendant in the premises under his contract which was enforceable in equity. The Court of Appeals on the former trial also decided that the three clauses in the mortgages to which objection was made were unusual as a matter of law. It is claimed that the land was vacant and produced no income, and that therefore two of these clauses could not be prejudicial to the purchase. Evidence that the land was vacant was in the former record. Moreover, the land might be built upon and rented before the mortgages were to fall due. Therefore the plaintiff was not obliged to take the title. If the defendant offered to endeavor to remove the objections and requested time thereafter this was refused, and the defendant afterwards took title and before the trial obviated the objections in this regard, it is quite likely that a court of equity would refuse to decree a lien or judgment in favor of the plaintiff, and would enforce specific performance at the instance of the defendant. That, however, is not the case at bar. Here the defendant not only did not tender title in accordance with his contract, but he has never acquired title. He has not removed the objections in question, nor has he shown that he could have removed them even if that would have been of any avail to him, which is a question not now presented for decision. It will not do in these circumstances to assume, without any evidence to sustain the proposition, that if the defendant had been given time he might have removed the objections.

It is further contended on behalf of the respondent that the objections only affect one of the parcels, and that it was the duty of the plaintiff under the contract to take title to the other, and therefore he is debarred from recovering the down payment and expenses. The answer to this contention is that the objection that the clauses in the mortgages which have been herein set out and discussed do not render the title unmarketable, but establish a breach of the contract with respect to the mortgages, subject to which title was to be taken. It would seem, therefore, that the plaintiff was entitled to maintain the action as one in equity although equitable relief cannot now be awarded for the reason that the defendant has not taken title and has doubtless lost all his rights under his contract. Under the well-settled rule, equity may retain jurisdiction and award a money judgment.

I am also of opinion that the plaintiff would be entitled to recover even though the action be regarded as one at law. The action was regularly on the Special Term calendar and no objection was made to its being tried at Special Term. The defendant did not plead in his answer that the plaintiff had an adequate remedy at law, nor was the objection taken at the trial that his remedy was at law; moreover, there was no request or even suggestion that the issues be sent to a trial term for a jury trial. Of course regarded as a suit in equity the filing of the summons, complaint, and lis pendens before negotiations were finally broken off, and while the parties were waiting

for the wife of the defendant to appear and execute the deed to be tendered to the plaintiff would not affect the right of the plaintiff in maintaining the action in equity, although it might have a bearing on the question of costs. The filing of these papers does not affect the plaintiff's rights if this be regarded as an action at law. Considered as an action at law filing of the papers is quite immaterial, for that does not constitute the commencement of the action, and, so far as the record shows, the summons was not served until after there was due tender and demand of performance, which put the defendant in default.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.