### WESTOWN REALTY CO. v. KELLER.

(Supreme Court, Appellate Division, First Department.   March 17, 1911.)

1. SPECIFIC PERFORMANCE (§ 89*)—PERFORMANCE BY VENDOR.

Plaintiff agreed to convey to defendant an apartment house which included apartments in the basement, which defendant was told were used by the janitor, though they were not occupied by the janitor at the time. The contract also provided that plaintiff would comply with all the requirements of the tenement house department and notices of violations of law or ordinances, and convey the premises free from the same. The windows of the basement apartment did not comply with the tenement house law, and, instead of making the basement conform thereto, plaintiff had it dismantled so that it could not be occupied. *Held*, that defendant was entitled to a conveyance of the premises substantially as they were when he agreed to purchase, and plaintiff could not compel specific performance after having dismantled the basement; he being bound, in order to specifically enforce the contract, to make the basement conform to the tenement house regulations.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 227; Dec. Dig. § 89.*]

2. SPECIFIC PERFORMANCE (§ 100*)—OBJECTIONS TO RELIEF—CHANGE OF CONDITIONS.

If, at the time of trial, 10 of the 24 rentable apartments were vacant, while only 1 was vacant when the contract was made, there was such a change of condition as to make it inequitable to defendant to compel specific performance by him even if plaintiff would be entitled to specific performance after rescission of the contract by defendant upon plaintiff's failure to convey as agreed upon the date fixed for performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 305–310; Dec. Dig. § 100.*]

3. VENDOR AND PURCHASER (§ 334*)—REMEDIES OF PURCHASER—RECOVERY OF PURCHASE MONEY—RESCISSION.

If the vendor failed to make the premises conform to tenement house regulations at the time fixed for conveyance as agreed, the purchaser could rescind and recover the part of the purchase price paid with interest and the reasonable cost of examining title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

4. APPEAL AND ERROR (§ 1175*)—DISPOSITION—DISMISSAL.

Where plaintiff was not entitled to recover in a suit for specific performance because of matters which could not be changed by a new trial, the Appellate Division may dismiss the complaint upon reversal of a judgment for plaintiff without granting a new trial, though all of the trial court's findings are not approved by it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

5. SPECIFIC PERFORMANCE (§ 130*)—DENIAL OF SPECIFIC PERFORMANCE—RELIEF TO DEFENDANT.

Expenditures made for examining title cannot be allowed the purchaser upon refusal of specific performance to the vendor for his failure and inability to convey as agreed, where it is not shown that the amount expended was the reasonable value of services in examining title.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 424, 425; Dec. Dig. § 130.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by the Westown Realty Company against Joseph F. Keller. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered, unless defendant stipulates not to prosecute his counterclaim, in which event complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and MILLER, JJ.

John Frankenheimer (Laurence Arnold Tanzer, on the brief), for appellant.

Samson Lachman (Emanuel S. Cahn, on the brief), for respondent.

LAUGHLIN, J. The judgment is for the specific performance of a contract in writing between the parties made on the 7th day of October, 1909, by which the plaintiff agreed to sell and convey, and the defendant agreed to purchase, premises on the southerly side of West 107th street, east of Columbus avenue, having a frontage of 48 feet and 9 inches and a depth of 100 feet and 11 inches, and a six-story apartment house thereon, known as 66 West 107th street, borough of Manhattan, New York.

On the 25th day of October, 1909, the Title Insurance Company certified that the title was then in the plaintiff, and it was assumed, but not otherwise shown, that the plaintiff had title to the premises on November 1, 1909, the date specified in the contract for closing it; but it would seem that title was in one Harry E. Baer at the time the contract was made, for the premises were conveyed to him on November 2, 1908, and on September 9, 1909, he contracted to sell and convey them to I. Randolph Jacobs, who was acting for one Cutner, whom plaintiff as a holding company represented. Pursuant to their agreement, the parties met on November 1, 1909, to perform the contract. Plaintiff tendered a deed, but defendant objected to performing upon the grounds, among others, that a certain tenement house violation, so called, filed by the tenement house department on the 25th day of September, 1908, by which the use of six rooms in the cellar or basement, designed for and then occupied by the janitor of the building and his family, was required to be discontinued unless a permit for such use was obtained from the tenement house department, had not been removed, and that certain mortgages contained unusual and burdensome clauses and did not comply with the contract. Such a permit was required before said rooms could lawfully be used for living purposes, and it had been never been obtained and could not lawfully be issued because the building did not conform to the requirements of the tenement house law, in that the sizes of the windows in three of the rooms in the apartment were less than one-third of the superficial area of the rooms. It was expressly provided in the contract, among other things, that the plaintiff would comply with all notices of violations of law or municipal ordinances and all orders and requirements of the tenement house department "against or affecting the premises at the date hereof," and would convey the premises "free of the same." It was further expressly covenanted by the plaintiff as follows:

"All personal property appurtenant to or used in the operation of said premises is represented to be owned by the seller and is included in this sale, except gas ranges which may be rented."

It was conceded by the pleadings that the plaintiff requested, and the defendant refused, an adjournment of the closing. The court found in accordance with plaintiff's claim that it demanded a reasonable adjournment with respect to said violation "in order to have the same removed." It was not shown that the plaintiff's representatives made known to the defendant the purpose for which the adjournment was desired, or what, if anything, they purposed doing with respect to meeting the objections made to the title. After specifying his grounds for refusing to accept title, defendant evidently elected to rescind, for he demanded the return of his down payment of $500 and $300 for his expenses in having the title examined, and on the same day brought an action in the City Court to recover these amounts. The status of that action does not appear otherwise than as it may be inferred from the fact that the defendant interposed a counterclaim in this action, which was commenced eight days later, for the same items. The court found that pending this action and in the latter part of November, 1909, plaintiff removed the washtub and plumbing fixtures in this basement apartment and discontinued and abandoned the use of the basement apartment for living purposes, and thereafter and on December 13, 1909, on these facts obtained a dismissal of the violation. The court found that plaintiff, after the date for closing, proceeded with due diligence in this matter; but it is doubtful whether the evidence sustains this finding, and there is no evidence even to excuse its failure to have the violation removed before the date of closing. It was not shown that defendant was notified of the dismissal of said violation, or that there was a new tender of performance before the time of the trial, which was in the month of June thereafter. Time was not made of the essence of the contract by any express provision to that effect.

Without passing upon the question as to whether performance after the defendant had elected to rescind could avail the plaintiff even in an equitable action, we agree with the learned counsel for defendant that his client was entitled to a conveyance of the premises substantially as they were when he inspected them and made the contract, and that the dismantling of the apartment in the basement and the abandonment of it as a residence for the janitor was not such a compliance with and removal of the violation as was contemplated and required by the contract. It is no answer to this objection that the apartment was not in fact occupied by the janitor at the time defendant inspected the building before acquiring the contract. At that time the apartment was pointed out to him by plaintiff's agent as the janitor's apartment, and it was intended for that use. This building had 24 apartments above the basement designed for tenants, and its value would be materially affected by having to appropriate permanently one of the upper apartments to the use of a janitor, and this would doubtless affect the rental of the other apartments, for ordinarily apartments for janitors, particularly in high-class apartment buildings, are in the basement or removed from the apartments to be rented. Evidence

offered by defendant to show that the plaintiff had appropriated one of the upper apartments to the use of the janitor was excluded; but it is manifest that the janitor of an apartment building should reside on the premises. It may be that the windows could have been enlarged to conform to the requirements of the law without a very great outlay of money; but that was a duty which devolved on the plaintiff, and it constituted a material undertaking for a failure to perform which it forfeited the right it would otherwise have had to compel a specific performance of the contract, and defendant was at liberty to rescind and to recover the money paid on account of the purchase price with interest and the reasonable cost of examining the title.

On this ground, therefore, standing alone, defendant would be entitled to a reversal of the judgment; but it may also be observed that if a court of equity could relieve the plaintiff from the effect of the rescission of the contract made by the defendant on plaintiff's failure to perform on November 1, 1909, a point on which we deem it unnecessary to express an opinion at this time, and if plaintiff had been able to perform at the time of the trial—conditions had so changed to the prejudice of defendant, ten apartments having been then vacant, whereas only one was vacant when the contract was made, and it does not appear that this situation had changed at the time of performance—that specific performance should not have been decreed. Moreover, the decision of the Court of Appeals and our own more recent decision in Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862, and Id., 126 N. Y. Supp. 6, with respect to unusual clauses in mortgages, would require a reversal, for the mortgages subject to which defendant was to take title bring the case within those authorities.

The material facts with respect to the tenement house violation and the mortgages are found, and, since they cannot be changed in a new trial, plaintiff cannot recover in the action, and we may dismiss the complaint without granting a new trial, even though we do not approve all the findings of fact and particularly one to the effect that there was no material change in the situation between the date for closing the title and the time of the trial.

Appellant in his points in chief asks that the judgment be reversed and the complaint dismissed. In his points in reply he asks that he be given judgment for the relief demanded in the answer without a new trial. We could direct judgment for the amount of the down payment with interest, but not for the expenses of examining the title, for there is no finding that his disbursements in that regard, which are found to have exceeded $300, were the reasonable value of the services.

We are of opinion therefore that the judgment should be reversed, with costs to appellant, and a new trial ordered, unless defendant stipulates not to prosecute his counterclaim in this action, in which case the complaint is dismissed, with costs. All concur.