SAMUEL HAMMER, Respondent, *v.* HARRIS MICHAEL, Appellant.

Vendor and purchaser — real property — specific performance — discretion of courts of equity in decreeing specific performance must be governed by reason and facts — law does not ignore physical conditions though premises are described by metes and bounds and referred to by street number — premises sold as tenement house and contracted to be conveyed free of violations of Tenement House Law — removal of one family and tender as two-family house an evasion, not a fulfillment, of contract.

1. While courts of equity decree specific performance in the exercise of discretion, this discretion does not mean free will. It is governed by reason and by facts which make its judgment fair and just.

2. Although a contract of sale described premises sold by metes and bounds and referred to them by street number, the law does not ignore or shut its eyes to the physical conditions existing at the time of contract. What the purchaser saw through the vendor's representations, the law sees.

3. Specific performance of a contract to purchase what appeared to be and was represented by the vendor to be a three-family tenement house will not be decreed, where the contract provided that all requirements by the Tenement House Department " shall be complied with by the seller and the premises * * * conveyed free of the same," and a notice of violation of the Tenement House Law was removed only by having one family move out so that it was no longer a tenement house subject to control of the tenement house department and the

building was tendered by the vendor to the purchaser as a two-family house. Such action is an evasion of a contract, not its fulfillment, and courts of equity are to do equity and compel fair dealing; they are not to aid in clever attempts to escape just obligations.

*Hammer* v. *Michael*, 216 App. Div. 847, reversed.

(Argued October 7, 1926; decided November 16, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 8, 1926, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term but reversing the second finding of fact.

*Herman S. Bachrach* and *Simon Berg* for appellant. On November 25, 1924, the plaintiff was not ready, able and willing to fulfill and perform his agreement with the defendant. (*Western Realty Co.* v. *Keeler,* 143 App. Div. 458; *Anderson* v. *Steinway & Sons,* 178 App. Div. 507; 221 N. Y. 639.) A court of equity should not decree specific performance in this case. (*Barrett* v. *Miner,* 119 Misc. Rep. 230.)

*Albert A. Lustig* for respondent. On November 25, 1924, plaintiff was ready, able and willing to fulfill and perform his agreement with the defendant. (*Abraham* v. *Wechler,* 120 Misc. Rep. 811; 210 App. Div. 876; *Mackmull* v. *Brandlein,* 152 App. Div. 733; *Anderson* v. *Steinway & Sons,* 178 App. Div. 507.)

CRANE, J. The defendant on the sixth day of October, 1924, contracted to buy the premises owned by the plaintiff, known as 142 Hooper street, Brooklyn, N. Y. The building consisted of three floors used by three separate and distinct families, and was constructed for this purpose. The trial court found and it was conceded that the property at the time the defendant saw and examined it and at the time of the contract was occupied by three families yielding $57.50 a month from the top floor apartment; $60.00 a month from the middle floor

apartment, and the ground floor which was then occupied by the plaintiff had yielded a rental of $80.00 a month. The plaintiff so represented. The trial court also found that at the time the agreement was entered into the three apartments were provided with separate cooking facilities, separate kitchens not connected in any way with one another, and the building was equipped with fire escapes.

Under the Tenement House Laws (Cons. Laws, chap. 61) this building was a tenement house requiring the approval of the tenement house department.

The defendant, therefore, purchased what he saw and what was represented by the plaintiff — a tenement house. The trial judge so found. Under the circumstances he could not find otherwise. The agreement, said the trial judge in his findings, provided for the purchase and sale of a three-family house yielding or capable of yielding a rental of $197.50 a month.

Although the contract of sale described the premises by metes and bounds and referred to them by street number as 142 Hooper street, the law does not ignore or shut its eyes to the physical conditions existing at the time of contract. What the defendant saw through the plaintiff's representations the law sees. (*Webster* v. *Kings County Trust Co.*, 80 Hun, 420; affd., 145 N. Y. 275; *Westown Realty Co.* v. *Keller*, 143 App. Div. 458; *Anderson* v. *Steinway & Sons*, 178 App. Div. 507; affd., 221 N. Y. 639.)

The defendant, therefore, purchased a tenement house occupied by or to be occupied by three families for which it was fitted up and prepared.

There was no misunderstanding about this between the parties and the contract provided: "All notices of violation of law or orders or requirements issued by the Tenement House Department * * * against or affecting the premises at the date hereof *shall be complied with by the seller* and the premises shall be conveyed free of the same."

At the time of the closing there was a violation filed against the building which read as follows:

" This is dated February 27, 1922. Your attention is called to the fact that the premises known as 142 Hooper Street, of which you are recorded to be the owner, does not conform to the provisions of the Tenement House Law in the following particulars:

" 1. This building has been converted from a non-tenement into a tenement house without having plans and applications filed for approval of the Tenement House Department, and it is now occupied as such without certificate from the Tenement House Department;

" a. The above building is now arranged as a tenement;

" b. The above building, by this arrangement, is intended and designed to be occupied as a tenement;

" c. The above building is now occupied by three families."

This notice required the owner to have the plans for his tenement house approved by the tenement house department, and to obtain a certificate from the department for its maintenance as such. The plaintiff by his contract agreed to *comply* with this order and notice of the tenement house department; he agreed to have his plans for the tenement house approved and to obtain the department's certificate so that the house might be used and rented as a tenement house. He has failed in his agreement; he has never obtained such approval or certificate. The family on the second floor moved out and the plaintiff then tendered the building as a two-family house, notice of violation having been removed, as the building was no longer used as a tenement house or occupied by three families. Such action is an evasion of a contract; not its fulfillment. Courts of equity are to do equity and compel fair dealing; they are not to aid in clever attempts to escape just obligations.

The trial court found that the difference in rental value between the premises as a three-family house and the

premises as a two-family house is $690 a year. This finding was not disturbed by the Appellate Division. Under such circumstances the court had no power or discretion to order specific performance compelling the defendant to take a two-family house. While courts of equity decree specific performance in the exercise of discretion, this discretion does not mean free will. It is governed by reason and by facts which make its judgment fair and just. (*Matter of Superintendent of Banks, etc.,* 207 N. Y. 11.)

As there is no claim here that the plaintiff ever intended to have his plans approved by the tenement house department or that he ever attempted to procure the proper certificate the judgment below should in my opinion be reversed for these reasons, and the complaint dismissed.

While affirming the trial court, the Appellate Division reversed " the second finding of fact found herein." This finding relates to the contract in writing, Exhibit A, which was concededly made and executed. It may be that the second finding of the defendant's *proposed* findings was intended. This is to the effect that the agreement provided for the purchase and sale of a three-family house, capable of yielding $197.50 per month. The order of the appellate court does not state that this finding is reversed, but we may reasonably infer it. The evidence, however, amply sustains the proposed finding, and did in the mind of the trial judge, who decided, nevertheless, against the defendant.

If we eliminate all the circumstances surrounding the making of this contract, the nature of the building and the representations of the plaintiff, the contract may be read as referring to a building, irrespective of rentals or tenement house construction. This is the way the lower courts considered it.

But even then a court of equity would take these matters into consideration when asked to decree specific perform-

ance. Assuming that the plaintiff did not by his written contract agree to sell a three-family house yielding $197.50 a month, and that at the time of closing there was no tenement house violation filed against the building, yet the court was not justified, in view of all the circumstances and its findings, in decreeing specific performance.

For these reasons, therefore, the judgments below should be reversed, and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., McLAUGHLIN and ANDREWS, JJ., concur; CARDOZO, POUND and LEHMAN, JJ., concur in the result upon the ground that according to the uncontroverted evidence the enforcement of the contract would be oppressive and inequitable by reason of the defendant's excusable mistake as to the character of the building, and that a decree for specific performance should, therefore, be withheld. (*Margraf* v. *Muir*, 57 N. Y. 155; *McClure* v. *Leaycraf*, 183 N. Y. 36.)

Judgment accordingly.