JULIO A. RUIZ, Appellant, *v.* JACK CRESPI et al., Respondents.

Second Department, November 18, 1974.

*Jack C. Garfield* for appellant.

*Joseph A. Muccia* for respondents.

SHAPIRO, J. The plaintiff, as buyer, entered into a contract with the defendants for the purchase of the latter's real property. He did not take title and sued for the return of his down payment plus the net title charges. The defendants counter-

claimed for specific performance. The Special Term, after a hearing at which certain proofs were presented, denied the plaintiff's motion for summary judgment and granted the defendants' cross motion to dismiss the plaintiff's complaint and to direct the latter to specifically perform the terms of the contract. We reverse and grant the plaintiff's motion and deny the defendants' cross motion.

The contract contains the following pertinent provisions: "6. Said premises are sold and are to be conveyed subject to * * * f. Existing tenancies consisting of the following: tavern operated at 1129 Myrtle Ave. leased to Torres, a copy of lease agreement initialed by sellers annexed hereto. Top floor apt. rented to Colon—no lease—pays $125. per month. Seller to furnish affidavit at closing that first rented 7/1/72. Other apt. rented to A. De Jesus paying $72 per mo.—no lease."[1]

The defendants admit that at the time the contract was entered into the Colon and De Jesus apartments referred to were occupied as residences. In connection with the removal of a violation, affecting the tavern on the ground floor of the premises, the defendants obtained a certificate of occupancy for the building. The certificate of occupancy limits the use of the De Jesus apartment to " office " use. The plaintiff refused to accept title on the ground that that apartment could not be lawfully occupied for residential purposes. The defendants contend in their brief that " plaintiff is seeking to so enlarge and alter the above quoted sentence in subparagraph 6-F of the contract as to read that seller represents the said apartment to be a legal apartment and so authorized by a Certificate of Occupancy." A fair reading of subdivision f of paragraph 6 shows that it is not necessary to enlarge its meaning to hold that the defendant sellers represented that the De Jesus apartment was legally occupiable for residential purposes.

In *Hammer* v. *Michael* (243 N. Y. 445) the plaintiff was the vendor. He sought specific performance under facts quite similar to those here present. There, as stated in the court's opinion (p. 446), " the building consisted of three floors used by three separate and distinct families, and was constructed for this

---

1. Subdivision f as originally contained in the contract — drawn by the sellers' (defendants') lawyer — contained only the typewritten words: " Existing tenancies ". At the request of the attorney for the plaintiff-buyer, the rest of the clause was added in handwriting. If anything, this undenied fact adds to the conclusive nature of the representation that the Colon and De Jesus apartments were legally occupiable as residences.

purpose." It developed that the building could not be legally used as a three-family dwelling. Apparently the plaintiff thereupon had the family on the second floor moved out and " then tendered the building as a two-family house, notice of violation having been removed, as the building was no longer used as a tenement house or occupied by three families " (p. 448). In reversing the judgment in favor of the plaintiff and dismissing his complaint, the court said (p. 447): " The defendant, therefore, purchased what he saw and what was represented by the plaintiff — a tenement house. * * * What the defendant saw through the plaintiff's representations the law sees. [Citing cases.] The defendant, therefore, purchased a tenement house occupied by or to be occupied by three families for which it was fitted up and prepared."

The court, in answering the plaintiff vendor's contention that his action in having the second-floor tenant move out and thereby having the violation removed constituted compliance with the contract, said (p. 448): " Such action is an evasion of a contract; not its fulfillment. Courts of equity are to do equity and compel fair dealing; they are not to aid in clever attempts to escape just obligations."

I think that the *Hammer* case is a direct authority in favor of the plaintiff's position. The contract of sale in this case specifically gave the name of the apartment dweller and the monthly rental that he paid. The fact here, as in *Hammer,* that this apartment dweller has removed from the premises is wholly immaterial, for it is admitted that the second-floor apartment may not legally be used for residential purposes.[2] The *non sequitur* in the reasoning of the defendants here is made amply clear if we indulge in the following illustration: Suppose, instead of having merely two residential apartments specified in the contract, as here, there were 20 residential apartments, with the rentals of each listed. Could the vendor compel the buyer to accept title if it turned out that none of the apartments could be used for residential purposes because the certificate of

2. Mr. Justice MUNDER, in his partial dissent, attempts to distinguish the *Hammer* case because " in our case the second-floor area is not rendered unproductive. It can be rented for office use and we have no evidence before us that it will *not* rent for as much as when it was rented for residential use." The point, however, is that the plaintiff bargained for a second floor which could be used for residential purposes and it is immaterial that for office purposes it might be rentable " for as much as when it was rented for residential use." Furthermore, office space is often — as is now the case — a glut on the market, whereas there is ordinarily always a need for residential space. The plaintiff should not be compelled to take something he did not bargain for.

occupancy only permitted their use for office purposes, just because he succeeded in having all the tenants move out? The question answers itself.

The order-judgment appealed from should therefore be reversed on the law, with costs, plaintiff's motion granted and defendants' cross motion denied.[3]

In any event, and assuming that the plaintiff were not entitled to summary judgment in his favor, it would seem clear that the defendants' cross motion for summary judgment decreeing specific performance should have been denied, for whether under all the circumstances it would be inequitable to direct specific performance should await a trial of the issues (*Margraf v. Muir,* 57 N. Y. 155; *McClure* v. *Leaycraft,* 183 N. Y. 36) and not be determined on motion papers (see, also, *Cohen* v. *Kranz,* 12 N Y 2d 242, 247).

MUNDER, J. (concurring in part and dissenting in part). I concur insofar as the majority is reversing the grant of summary judgment to the defendants, but otherwise dissent and would deny summary judgment to the plaintiff as well as to the defendants. In my opinion, there is a fact issue to be resolved as to the intention of the parties in respect to paragraph 6 of the contract, i.e., whether it was intended as a representation upon which the plaintiff might rely that the second-floor space was available for residential use.

I distinguish *Hammer* v. *Michael* (243 N. Y. 445) because there the sale was of a three-family house capable of yielding $197.50 a month. A tenement-house violation that had to be complied with before the closing of title required the seller to obtain a certificate from the municipal tenement house department approving the use and maintenance of the premises as a tenement house. The seller removed the violation by eliminating one of the tenancies and restoring the building to a two-family house. The Court of Appeals noted that the trial court had made a finding, which was not disturbed by this Appellate Division, that this necessarily reduced the income by

---

3. The defendants also contend that the plaintiff never tendered performance under the contract and therefore may not recover his down payment, but " a vendee can recover his money paid on the contract from a vendor who defaults on law day without a showing of tender or even of willingness and ability to perform where the vendor's title is incurably defective " (*Cohen* v. *Kranz,* 12 N Y 2d 242, 246). See, also, *Iannelli Bros.* v. *Muscarella* (30 A D 2d 698, 699, affd. 24 N Y 2d 779), in which his court said, " In our opinion, plaintiff was entitled to the return of its down payment without the making of an obviously futile tender and demand on the adjourned law day."

$690 a year and, because of that, held that this act of the seller constituted an evasion of the contract, not its fulfillment. In our case the second-floor area is not rendered unproductive. It can be rented for office use and we have no evidence before us that it will *not* rent for as much as when it was rented for residential use.

CHRIST and BENJAMIN, JJ., concur with SHAPIRO, J.; MUNDER, J., concurs in part and dissents in part in an opinion in which MARTUSCELLO, Acting P. J., concurs.

Order-judgment of the Supreme Court, Kings County, dated November 1, 1973, reversed, on the law, with costs, plaintiff's motion granted and defendants' cross motion denied.