ABRAHAM ELTERMAN, Appellant, *v.* JACOB HYMAN,
Respondent.

REAL PROPERTY — VENDOR AND PURCHASER — EQUITABLE LIEN —
WHEN VENDEE, NOT IN POSSESSION, HAS LIEN FOR AMOUNT PAID ON
CONTRACT — ACTION TO FORECLOSE LIEN NOT A RESCISSION OF THE CON
TRACT. A vendee of land, under an executory contract for the purchase
thereof, has a lien on the land for the amount paid pursuant to the con-
tract, although not in possession and with no special equity. When the
vendee is without fault and the vendor cannot give good title, the former
may sue in equity for a foreclosure of his lien, and the commencement of
such an action is not a rescission of the contract but an affirmance thereof
to secure a right given thereby and by payment pursuant to its terms.

*Elterman* v. *Hyman*, 117 App. Div. 519, reversed.

(Argued April 14, 1908; decided May 19, 1908.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered Feb-
ruary 14, 1907, affirming a judgment in favor of defendant
entered upon a dismissal of the complaint by the court on trial
at Special Term.

This action was brought to recover the amount paid upon a
contract for the purchase of land as well as the amount incurred
for expenses in examining the title and to establish and enforce
a lien therefor upon the ground that the plaintiff was ready
and willing to perform while the defendant was not because
the title was unmarketable. The answer admitted the con-
tract and the payment made thereon, but denied the remain-
ing allegations of the complaint. It alleged facts constituting
a counterclaim and asked that the plaintiff be adjudged to
specifically perform by paying the balance of the purchase
price.

By a contract, dated November 9th, 1904, the plaintiff
agreed to purchase and the defendant to convey two adjoining
parcels of land situate in the borough of Manhattan. The
purchase price was $31,750 of which $1,500 was paid down
and the balance was to be paid partly in cash and partly by

taking the property subject to certain mortgages. One of the mortgages was described in the contract as for $10,000 in amount "due on or about December 17th, 1906, or on thirty days notice after the first year, said mortgage bearing interest at the rate of five per cent per annum, containing *the usual clauses*, also a mortgage tax clause." Three other mortgages were specified, two of which were described as containing "the usual clauses," and a third as containing "the usual second mortgage clause." The transaction was to be closed on the 9th of January, 1905, when payment was to be made by the plaintiff and a deed delivered to him by the defendant "containing a general warranty with the usual full covenants for the conveying and assuring" to the purchaser, "the fee simple of said premises free from all incumbrances, except as aforesaid."

Among the findings of fact which appear in the judgment roll the trial court found "that the defendant was on the 9th day of January, 1905, the date mentioned in the said contract for closing, ready, willing and able to convey a good and marketable title to the premises above described; as provided for by the terms of the contract for the sale of the said property made and entered into by and between the plaintiff and defendant; * * * that the mortgages of record upon said property and the mortgages made and tendered at the time of closing were ordinary in form and contained no unusual burdensome clauses; * * * that at the same time and place defendant and his vendors agreed and offered to allow plaintiff out of the purchase money, a sum sufficient to cover and pay all taxes and assessments unsatisfied of record against said premises, but that the plaintiff refused to pay the balance of the purchase price as provided for in said contract."

In passing upon certain requests to find presented by the plaintiff, the trial court found that on the law day the defendant "did not present any proof that the six items of unpaid assessments amounting to $133.08 had been paid or discharged; * * * that no offer was made by the defendant or his attorneys on his behalf to allow out of the purchase

money the amount of such unpaid assessments so aggregating $133.08, or to deposit the amount thereof with the defendant (plaintiff) or with any person or corporation satisfactory to him to abide the production of proof of the payment thereof, and no request was made by the defendant or his attorneys of the plaintiff or his attorneys for any adjournment of the closing; * * * that there never was any $10,000 mortgage covering the first parcel of the property described in the contract * * * due on or about December 17th, 1906, or on thirty days' notice after the first year, containing the usual clauses and also a mortgage tax clause; on the contrary, there were two mortgages of $5,000 each, each covering one-half of the parcel, and each mortgage due on December 29th, 1907, or on sixty days' notice after the first year, and each mortgage contained clauses assigning the rents of the property on default of any of the covenants in the bond accompanying the mortgage, and that each mortgage should be due and payable on the actual or threatened demolition of any building that might be erected on the premises, and should be due in case of the failure of the owner to certify to the mortgagee the amount due on the said mortgages thirty days after the mailing of a notice, or six days after personal notice requiring such certificate, to such owner; that the clauses in the said two $5,000 mortgages * * * that the mortgages should be due in case of the failure of the owner of the property to certify to the mortgagee the amount due on said mortgages thirty days after the mailing of a notice, or six days after personal notice requiring such certificate to such owner, are unusual clauses in a mortgage; * * * that on the said 9th day of January, 1905, * * * there was presented to the attorneys for the plaintiff proof satisfactory to them that all the taxes that were on the premises had been paid, but there was not presented to them any proof that six different assessments, aggregating the sum of $133.08, had been paid and those six assessments so aggregating $133.08 were not paid on the said 9th day of January 1905, and four of those assessments aggregating the sum of $67.87 were not paid until January

14th, 1905, and two of those assessments aggregating $65.19 still remain unpaid and are still liens on the premises."

The trial court found as conclusions of law "that the title to the premises in question was good and marketable at the time originally designated for the closing of the title in the contract of sale, to wit, January 9th, 1905 ; that the defendant on the said 9th day of January, 1905, could have conveyed and was in a position to convey to the plaintiff a good and marketable title to said premises in accordance with the terms of the contract; that the plaintiff was bound and obliged to take title from the defendant and accept the deed of the premises offered and tendered to him on the said 9th day of January, 1905 ; that the defendant is entitled to judgment dismissing the complaint on the merits with costs." The judgment entered accordingly was unanimously affirmed by the Appellate Division and the plaintiff appealed to this court.

*Edward W. S. Johnston, Samuel C. Cohen, Lawrence B. Cohen, Maxwell G. Cohen* and *Harold H. Cohen* for appellant. The plaintiff has a good and sufficient action in equity to establish a lien as vendee. (*Smadbeck* v. *Law*, 106 App. Div. 552.) The plaintiff is entitled to recover back his deposit money and also his attorneys' fees for searching the title. (*Van Schaick* v. *Lese*, 31 Misc. Rep. 616 ; *Bowen* v. *Mandeville*, 95 N. Y. 237 ; *Rodermund* v. *Clark*, 46 N. Y. 354 ; *Terry* v. *Munger*, 121 N. Y. 166 ; *Washburn* v. *Benedict*, 46 App. Div. 490 ; *Boots* v. *Ferguson*, 10 N. Y. S. R. 762, 764 ; *Bach* v. *Tuch*, 126 N. Y. 56 ; *Goss* v. *Mather*, 46 N. Y. 689.)

*Isidor Wasservogel* and *Abraham I. Spiro* for respondent.

VANN, J. The learned Appellate Division ignored the inconsistencies between the facts found at the request of the plaintiff and those appearing in the decision directing judgment, upon the ground that no fact found, unless it appears in the formal decision, "forms any part of the judgment roll, or can be considered for any purpose by the appellate court."

(*Elterman* v. *Hyman*, 117 App. Div. 519.) Since that decision was made we have held otherwise and the practice must now be regarded as settled that the facts found upon request, whether incorporated in the decision proper or not, are for the consideration of the appellate courts, to enable them in reviewing a case to apply the proper principles of law. (*Bremer* v. *Manhattan Ry. Co.*, 191 N. Y. 333, 339.)

When findings are so inconsistent that it is impossible to harmonize them, "it is the duty of the court to accept those most favorable to the appellant, as he is entitled to rely upon them in aid of his exceptions." (*Israel* v. *Manhattan Ry. Co.*, 158 N. Y. 624, 631; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 84, 98.)

The trial court found both ways upon several material questions of fact. The conflict, when resolved in favor of the appellant, leaves the premises subject to the lien of unpaid assessments, with no offer to credit the amount thereof upon the purchase price, or request for an adjournment to enable the vendor to procure a discharge of the lien.

According to the contract, the existing mortgages, which were to remain upon the premises, contained the "usual clauses," and this specific mention impliedly excludes unusual clauses, yet according to the findings when read in the light of the rule giving the appellant the benefit of those most favorable to his interests, one clause, at least, was found unusual as matter of fact and, we think, two others were unusual as matter of law. The clause assigning rents on the breach of any covenant in the bond, if not entirely unprecedented, is certainly unusual. The same is true of the clause making the mortgage due on the actual or threatened demolition of any building on the premises. The mysterious clause requiring the owner to certify to the mortgagee the amount due on the mortgage within a specified time after notice, either personal or by mail, is not only unusual but oppressive, for it might deprive the mortgagor of his land, or at least put him to great trouble and expense, owing to his absence from home or the miscarriage of a letter.

It is clear, therefore, that the facts found do not support the conclusion of law that the defendant "was in a position to convey to the plaintiff a good and marketable title to said premises in accordance with the terms of said contract."

. The question remains whether a vendee, not in possession and with no special equity, has a lien for the amount paid on a contract for the purchase of land that can be foreclosed upon the default of the vendor? The Appellate Division in the first department, after thorough discussion, two elaborate opinions having been written, one on either side, has held that a lien exists for the amount paid on the contract, but not for the expense of examining the title. (*Occidental Realty Co. v. Palmer*, 117 App. Div. 505.) The rule in the second department is that no lien exists even for the purchase money paid down, unless the vendee has taken possession. (*Klim v. Sachs*, 102 App. Div. 44.) The subject was not considered at length in the case last cited, only three sentences being devoted to it; and while the judgment was modified by striking out the part giving a lien, it was affirmed as to the recovery of the sum paid on the contract, although the action was in equity. This case was followed without discussion by the same court in *Krainin* v. *Coffey* (119 App. Div. 516).

The right of a vendor to a lien for the purchase money unpaid is well established, and the courts of this state have uniformly recognized the right of a vendee to a lien when he was in possession, or had made improvements, or where special equities intervened. (*Parks* v. *Jackson*, 11 Wend. 442; *Chase* v. *Peck*, 21 N. Y. 581; *Gibert* v. *Peteler*, 38 N. Y. 165; *Tompkins* v. *Seely*, 29 Barb. 212, 217.) In some cases in this state and generally in other states which give a lien to the vendor, a lien has been decreed although there was no equity except that arising from payment on the land, pursuant to a contract for the land, provided the vendor made default. (*Occidental Realty Co. v. Palmer, supra; Stevenson* v. *Spratt*, 3 J. & S. 496, 503; *Clark* v. *Jacobs*, 56 How. Pr. 519; *Craft* v. *Latourette*, 62 N. J. Eq. 206; *Bullitt*

v. *Eastern Ky. Land Co.,* 99 Ky. 324, 327; *Shirley* v. *Shirley,* 7 Blackf. [Ind.] 452; *Coleman* v. *Floyd,* 131 Ind. 330, 335; *Galbraith* v. *Reeves,* 82 Tex. 357; *Newnan* v. *Maclin,* 3 Hayw. [Tenn.] 241; *Sautelle* v. *Carlisle,* 13 Lea [Tenn.], 391, 397; *Wickman* v. *Robinson,* 14 Wis. 493, 496.)

The question does not appear to have been before the Supreme Court of the United States, although it has declared that " the vendor is a trustee of the legal title for the vendee to the extent of his payments." (*Jennisons* v. *Leonard,* 21 Wall. 302, 309.)

We find no well-considered case in any state that denies a lien to the vendee, even if payment is the only ground therefor, except such as withhold a lien from the vendor also. (*Ahrend* v. *Odiorne,* 118 Mass. 261; *Philbrook* v. *Delano,* 29 Me. 410.) The doctrine is well established in England where it is sometimes said to have originated as recently as 1855, but it was clearly announced nearly twenty years before the Revolutionary war by a court of which Lord MANSFIELD was a member. (*Burgess* v. *Wheate,* 1 W. Blacks. 123, 150.) It was recognized by Lord St. Leonards in the first edition of his great work on Vendors and Purchasers, published in 1805 (p. 671), and three years later by Lord ELDON in *Mackreth* v. *Symmons* (15 Vesey, Jr., 329, 344). In 1855, however, the question arose directly and although the vendee was not in possession and there was no special equity in his favor he was held to have a lien both upon principle and authority. (*Wythes* v. *Lee,* 3 Drewry's Ch. 396, 403.)

In 1864 the question was fully discussed in the House of Lords and it was adjudged without dissent that the vendee has a lien, because every payment by him is *pro tanto* performance of the contract on his part and in equity transfers to him a corresponding portion of the estate. (*Rose* v. *Watson,* 10 H. L. Cas. 672.) The lord chancellor in delivering the leading opinion said : " When the owner of an estate contracts with a purchaser for the immediate sale of it, the ownership of the estate is, in equity, transferred by that contract. Where the contract undoubtedly is an executory contract, in this sense,

namely, that the ownership of the estate is transferred, subject to the payment of the purchase money, every portion of the purchase money paid in pursuance of that contract is a part performance and execution of the contract, and, to the extent of the purchase money so paid, does, in equity, finally transfer to the purchaser the ownership of a corresponding portion of the estate. * * * In conformity, therefore, with every principle, the purchaser paying the money acquired an interest in the estate by force of the contract and of that part performance of the contract, namely, the payment of that portion of the purchase money. * * * It cannot be contested in this case that although the contract has failed of being performed completely, that failure of performance is attributable entirely to the vendor. * * * It has been contended at the bar, in words, that the contract has been rejected by the purchaser, and that, therefore, the purchaser ought not to have the benefit of lien, that is, of that partial ownership, that interest in the estate which is due to the purchase money which he has paid. It is quite a mistake and a misapplication of the word to say that the purchaser has rejected the contract, or put an end to the contract. The purchaser would have been willing to perform the contract if the vendor had performed those things which, in good faith, he was bound to do. And it is impossible to say, with any truth or accuracy of expression, that the purchaser has repudiated the contract, because the vendor has failed to redeem his own promise to which he had pledged his faith and in dependence upon which the purchaser entered into the contract."

Lord CRANWORTH, who delivered the other opinion, concurred with the lord chancellor and added : " There can be no doubt, I apprehend, that when a purchaser has paid his purchase money, though he has got no conveyance, the vendor becomes a trustee for him of the legal estate and he is in equity considered as the owner of the estate. When, instead of paying the whole of his purchase money, he pays a part of it, it would seem to follow as a necessary corollary, that, to the extent to which he has paid his purchase money, to that

extent the vendor is a trustee for him; in other words, that he acquires a lien exactly in the same way as if upon the payment of part of the purchase money the vendor had executed a mortgage to him of the estate to that extent."

Quite recently a case arose in the Chancery Division of the Court of Appeal where a contract for the purchase of land authorized the purchaser to rescind on the happening of a specified event and in due exercise of the power he rescinded the contract, but it was held that he had a lien on the land for the deposit which he had made.   ( *Whitbread & Co., Limited,* v. *Watt,* L. R. [1 Ch. Div. 1902] 835.)

In the case last cited the lien is spoken of as the invention of equity for the purpose of doing justice, but this is the foundation of all equitable liens.   They did not exist at common law, but were created by courts of equity because required by natural equity.   They do not depend upon express contract, but on the principle that one person has the legal title to something that another person has a natural and, hence, within well-guarded limits, a better right to, or to some part thereof.

In *Rose* v. *Watson* and *Whitbread & Co., Limited,* v. *Watt* the vendor was insolvent, but in neither case did the decision turn on that fact, which apparently was regarded as of no importance.

The elementary writers from Sugden, who wrote more than a century ago with almost the force of judicial authority, to the latest authors, announce as an established rule that the lien exists in favor of a purchaser, if the vendor cannot make a title, even if there are no extraneous equities.   (Sugden's Vendors & Purchasers [1st ed.], 671.)   In an edition, written fifty years later after the learned author had become Lord St. Leonards, he was more elaborate in statement and, among other things, said : "A deposit is part payment.   Therefore, part payment to that extent constitutes the purchaser actually owner of the estate ; consequently if the contract do not proceed without the fault of the purchaser, the seller, to recover the equitable ownership, must repay the deposit, which, repre-

senting a portion of the interest in the property, is a lien upon it." (Id. [13th ed.] 672.)

Judge Story, writing in 1835, declared " that from the time of the contract for the sale of the land the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, a trustee for the vendor, who has a lien upon the land therefor." Mr. Bigelow, the learned editor of the eighth American edition, adds in a note : " In the view of a court of equity the payment of the purchase money may well be deemed a loan upon the security of the land until it has been conveyed to the vendee. At least there is quite as much reason to presume it as there is to presume the land, when conveyed, to be still a security for the purchase money due to the vendor. In the latter case, though there is a debt due by the vendee, it does not follow that it is a debt due by the land. In the former, if the estate cannot be conveyed and is not conveyed, the money is really a debt due to the vendee. At all events in equity it is not very clear what principle is impugned by deeming the money a lien upon the ground of presumed intention." (2 Story's Eq. Jur. [8th Am. ed.] §§ 789, 1217, note.)

Mr. Pomeroy, who ranks as an author with Judge Story, wrote : " The lien of the vendee under a contract for purchase of land for the purchase money paid by him before a convey-ance is the exact counterpart of the grantor's — or, as it is commonly called, the vendor's — lien, described in the last section but one. · In the latter case the legal title has been conveyed to the grantee, and yet the grantor retains an equi-table lien upon the land as security for the purchase price agreed to be paid. In the former case the legal title remains in the vendor who has simply agreed to convey, while the vendee, although having as yet acquired no legal interest in the land by virtue of the contract, does obtain a lien upon it as security for the purchase money he has paid and for the performance of the vendor's obligation to convey. In England, therefore, and in the American states where the grantor's lien has been adopted, the vendee's lien upon the lands contracted

to be sold as a security for so much of the purchase price as he has paid prior to a conveyance and for the performance by the vendor of his obligation, exists to the same extent against the same classes of persons and is governed by the same rules as the corresponding lien of the grantor. The lien only arises, of course, when the vendor is in some default for not completing the contract according to its terms and the vendee is not in default so as to prevent him from recovering the purchase money paid." (3 Pomeroy's Eq. Jur. [3rd ed.] § 1263.)

" If the purchaser has paid the purchase money the vendor becomes a mere trustee of the legal title for the purchaser ; so, if the purchaser has paid part of the purchase money, the vendor becomes the trustee to the extent of the money paid." (1 Perry on Trusts [5th ed.], § 231.)

" Money paid by a vendee of land prematurely, or before receiving a conveyance, is a charge upon the estate in the hands of the vendor, or in the hands of the grantee with notice. And so, if a purchaser makes a deposit on account of the purchase money at the time of executing an agreement of purchase, which is not completed because the vendor is unable to give a good title, the purchaser has a lien upon the land for the money so paid." (2 Jones on Liens, § 1105.)

" If the contract fails, or is avoided because of the inability or refusal of the vendor to make a proper title, or because of fraud or misrepresentation in the contract, or for any other reason chargeable to the vendor, and which is not due to the default of the vendee, he is given a lien upon the land as security for the repayment of what he has paid in performance of the contract." (29 Am. & Eng. Encyc. Law [2nd ed.], 730.)

" A vendee under a land contract who prematurely pays the purchase money, or any part of it, has a lien therefor on the land contracted to be sold, if, by reason of the vendor's default, the contract is not performed. This lien is in all respects analogous to the vendor's lien for the unpaid purchase money. The legal title remains in the vendor, but the vendee has a lien on the land as security for the purchase money he

has paid. Such a lien generally arises where a deposit has been made by the purchaser and the title turns out to be defective, or for some other reason the sale is not completed." (Fetter on Equity, § 156.)

" The payment of the deposit, or part payment to the vendor or his agent, creates a lien for the amount paid on the vendor's interest in the land, or other property, the subject-matter of the contract.   *   *   *   The purchaser has a lien for his deposit not only when the contract goes off for want of title, but also when it is rescinded under a condition entitling the purchaser, or the vendor to rescind.   *   *   *   This lien in the case of a purchaser extends to all installments of the purchase money." (Fry on Specific Performance, §§ 1479, 1482.)

" Corresponding to the lien which a vendor has for his purchase money is the lien which equity gives the vendee on the land to the amount advanced towards the purchase money, until the vendor shall have made a title to the same.   *   *   *   And where the contract is executory, as fast as the purchase money is paid in, it is a part performance of such contract, and to that extent the payment of the money, in equity, transfers to the purchaser the ownership of a corresponding portion of the estate." (2 Washburn on Real Property [6th ed.], § 1039. See, also, 2 Warvelle on Vendors, § 30; Snell's Principles of Equity, 146; Beach on Trusts & Trustees, § 246; Reeves on Real Property, § 449; Thomas on Mortgages, § 64; 2 Williams on Vendor & Purchaser, 948, 950.)

Whether the foundation of the lien is natural equity, imputed intention, partial ownership, the implication of a trust, or a blending of some of these sources, the authorities, almost without exception in those jurisdictions which give a lien to the vendor, are clear that one exists. As the vendor has a lien because he owned the land but conveyed prematurely and the vendee ought not to keep it without paying for it, so, as it seems to me, the vendee has a lien because he has paid for the land pursuant to contract, and as he cannot get the land, he has a right to get out what he put in on the faith of the land. The

lien springs from the trust under which the vendor, as the legal owner, holds the land for the vendee, the equitable owner.   Part payment creates partial ownership, and the vendee has an interest in the land itself to the extent of the payments made thereon.   The contract and payment in full make him the equitable owner of all the land.   The contract and payment in part make him the equitable owner *pro tanto.*   When the vendor cannot convey, the equitable owner, wholly or in part, may assert his rights in a court of equity to get out of the land what he paid on it.   If the vendor is not the absolute owner, the lien of the vendee " exists only to the extent of the vendor's interest," which in this case is only that of a sub-purchaser.   (*Aberaman Iron Works* v. *Wickens,* L. R. [4 Ch. App.] 101 ; Fry on Specific Performance [3rd Am. ed.], 660.)   The right is correlative to that of the vendor conveying without payment.   In either case the *res,* or the subject of the contract, is the land, and whatever is paid on the land without corresponding conveyance, or conveyed without corresponding payment, is a lien on the land by virtue of parting with money on the faith of the land, or with land on the faith of the promise to pay for it.   Payment is not made on the credit of the vendor, but on the credit of the land, and the purchaser's money, in equity, is converted into land, or attached to it as a lien.   The equitable ownership, when specific performance cannot be had, is converted into money by a judicial sale of the vendor's interest, which in effect is the foreclosure of an equitable mortgage.

It is insisted that the whole agreement is to be taken together and completely performed or wholly rescinded, and that rescission by the vendee destroys the contract *in toto* and *ab initio.*   The same argument was urged by counsel in *Rose* v. *Watson,* and the complete answer of Lord WESTBURY has already been quoted.   None of the authorities relating to the lien of a vendee, and we have cited but few out of many, seem to regard the doctrine of rescission as at all applicable to the subject.   This is not an action at law resting on rescission by which an election is made to declare the contract void in

its inception, but a suit in equity resting on the equitable principle that the vendee by the contract and payment acquired an interest in the land. Rescission was neither alleged nor found and as the affirmance was unanimous we cannot look into the evidence for further facts. The vendee does not elect to nullify the contract nor seek remission to his original rights when he asserts his acquired rights, depending wholly on the contract and his action thereunder. He recognizes the contract as a subsisting obligation, valid in its inception and still in force, and founds his entire claim for relief on the theory that because it is valid and he has made payments on it as required by it, he has become an owner of the land in equity to the extent of such payments. He accepts " the situation which the wrongdoing of the other party has brought about," and tries to get out of the land what he paid on it under the contract. The termination of a contract as to the future by one party owing to the default of the other is a rescission neither *ab initio*, nor in any true sense. (*Hurst* v. *Trow P. & B. Co.*, 2 Misc. Rep. 361, 366; 142 N. Y. 637.) If it were, it would involve the surrender of possession taken pursuant to a provision authoriz- ing it and the abandonment of all improvements made while in possession. The vendee does not rescind when without fault he goes into a court of equity and insists on a right springing from the contract and payment thereon pursuant to its terms. He does not repudiate the contract, but stands on it and affirms it as the foundation of the right he seeks to enforce, as fully as if he sought entire specific performance. He does not abandon his equitable ownership by trying to assert it in the only way that it can be asserted. The con- tract has been performed by him, wholly it may be, or in part, as in the case before us, and as, owing to the fault of the ven- dor, he cannot have the full performance to which he is enti- tled, he asks for partial performance by the enforcement of the trust created by the contract and payment as provided thereby. He does not sue for money had and received, but to enforce a lien on land into which the money went. Nor

does he rescind the contract, which is the source of his lien, by seeking to enforce it to the only extent now possible, owing to the breach by the vendor, but he demands that equity should give him the interest in the land that he acquired by the contract and payment. The denial of that right would be an encouragement to wrongdoing, and to hold that an attempt to foreclose the equitable lien is a rescission of the contract would deny the right in all cases, including those in which the vendee is in possession and has made improvements.

The analogy of personal property is suggested and it is argued that the purchaser may pay on potatoes the same as on land, but the rules applicable to real estate, which, as part of the solid earth, is immovable and indestructible, have never been applied and in the nature of things cannot be applied to movable property that can disappear in a moment, can be delivered from hand to hand and which usually is paid for on delivery. The analogy, if logically and universally applied, would destroy many of the rules of equity, established after centuries of earnest thought by the most learned lawyers known to jurisprudence.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., and HAIGHT, J., concur; GRAY, HISCOCK and CHASE, JJ., concur in result for reasons stated in opinion of GRAY, J., in *Davis* v. *Rosenzweig Realty Operating Co.,* decided herewith; WILLARD BARTLETT, J., dissents solely on the ground that no action is maintainable to enforce a vendee's lien.

Judgment reversed, etc.