PHILIP EPSTEIN, Respondent, *v.* REGINA KROOPF and Others, Defendants, Impleaded with MORRIS WALFISH, Appellant, and PASQUALE LARUFFA, Respondent.

Second Department, December 3, 1926.

**Vendor and purchaser — vendee's lien for amount paid down and expense of examination of title — original vendee made contract for sale of land — plaintiff acquired said contract through mesne assignments — plaintiff's immediate assignor agreed to return down-payment and pay expense of search if title were unmarketable — original vendor could not convey marketable title — plaintiff has lien on land for down-payment made to immediate assignor and expense of examination to extent of original vendee's equitable interest — plaintiff's immediate assignor is entitled to vendee's lien to extent of original vendee's interest — original vendor is necessary party to action to recover down-payment.**

The plaintiff, the assignee of a contract for the sale of land, made by the original vendee, which contract came to the plaintiff through mesne assignments, is entitled to a vendee's lien for the down-payment to the extent of the interest of the original vendee in the premises, upon the failure of the original vendor

to tender a good and marketable title, where it appears that the original vendee is not in default on the contract between her and the original vendor.

The fact that the original vendee did not assign the contract but made a new contract for the sale of the land, does not deprive a subsequent assignee of that contract of his lien to the extent of the interest of the original vendee in the premises.

Since it appears that the plaintiff's immediate assignor agreed with the plaintiff that in case a good and marketable title were not tendered he would return to the plaintiff the amount paid down, plus the cost of the examination of the title, he is also entitled to a vendee's lien if he is compelled to pay to the plaintiff the down-payment and expense of examination under his covenant.

The original vendor is, therefore, a necessary party to this action against the original vendee and plaintiff's immediate assignor to recover the amount of the down-payment made by the plaintiff.

APPEAL by the defendant, Morris Walfish, from an order of the Supreme Court, made at the Queens Special Term and entered in the office of the clerk of the county of Queens on the 14th day of April, 1926, denying his motion for an order vacating and setting aside an order entered in said clerk's office on the 17th day of November, 1925, discontinuing this action as against the defendant Laruffa and canceling the *lis pendens* theretofore filed by the plaintiff, or, in the alternative, to bring in said Laruffa as a party defendant.

*William Rasquin, Jr.,* for the appellant.

*Jonah J. Goldstein* [*David Goldstein* with him on the brief], for the plaintiff, respondent.

*N. Howard Pinto,* for the defendant, respondent, Pasquale Laruffa.

YOUNG, J. The action was originally brought by the plaintiff to recover from the defendants the amount paid on account of the purchase price of certain real property in Queens county, and the expense of the examination of title, to establish a lien therefor upon said premises, and to foreclose it. The defendant Laruffa was the owner of the property and in July, 1925, contracted with the defendant Kroopf to sell it to her, and she paid a deposit on account of the purchase price. By this contract, Laruffa agreed to give a deed conveying a good title in fee simple to the premises with full covenants and warranty and free from all incumbrances, except certain restrictions and zoning regulations. On July 26, 1925, the defendant Kroopf contracted with the defendants Sherwood and Friedman to sell the premises to them for $6,000 which was paid by them at the time of the execution of the contract and they agreed to pay the additional sum of $2,400 in cash upon the

delivery of the deed. The defendant Kroopf, by this contract, agreed to give a good title, etc. On July 31, 1925, defendants Sherwood and Friedman, for value, assigned the contract to the defendant Hollander, and on July 31, 1925, the defendant Hollander, for value, assigned it to the defendant Walfish. On August 8, 1925, the defendant Walfish, for value, assigned the contract to one Joshua S. Shapiro, as attorney, and Shapiro, as attorney, paid defendant Walfish $6,500. By this assignment the defendant Walfish agreed with Shapiro that, if the title was unmarketable, he would return to Shapiro the $6,500 paid, and in addition the fees for title examination. This assignment was taken by Shapiro, as attorney, for the benefit and on behalf of the plaintiff. Plaintiff had the title examined by the Title Guarantee and Trust Company at an expense of $101. By the agreement between defendant Kroopf and the defendants Sherwood and Friedman the deed was to be delivered on August 28, 1925, but, by stipulation in writing, the closing of title was adjourned to September fourth.

The complaint then alleges the readiness of plaintiff to perform the contract on her part and the failure of the defendant Kroopf to deliver the deed provided for in the contract, her attorney stating that he could not procure a deed from the record owner of the premises and that he was ready and willing to return the money paid to the defendant Kroopf upon the contract; that plaintiff has an equitable lien on the premises for the $6,500 paid on the purchase price and $101, the expense of examination of title, and the complaint demands judgment for these amounts and to foreclose the lien therefor.

It appears by the affidavit of the attorney for the defendant Laruffa that the defendant Laruffa moved to dismiss the complaint as to him for insufficiency, and on December 2, 1925, Mr. Justice FABER granted the motion and canceled the *lis pendens* upon the ground that, since there was no privity of contract between plaintiff and defendant Laruffa, plaintiff could not have a conveyance from him and that the complaint stated no cause against him. The order of discontinuance and cancellation of the *lis pendens* was entered *ex parte* upon a stipulation between plaintiff's attorney and the attorney for the defendant Laruffa.

The plaintiff then served an amended complaint. As claimed by his attorney, by inadvertence the name of Laruffa appeared in that amended complaint as a defendant, but the relief demanded is only the recovery of the amount paid by plaintiff on the contract and the expense of examination of title. The allegations of the amended complaint are substantially the same as those contained in the original complaint except that no lien is claimed on the

premises and, in addition, it is alleged that the title is not marketable because the wife of Laruffa, who had an inchoate right of dower in the property, refused to release such right and that Laruffa was, therefore, unable to convey a marketable title in accordance with the contract.

The defendant Walfish interposed an answer to this amended complaint which contained certain denials and several separate defenses. The second and third defenses set up defendant's discharge from liability by reason of the adjournment without his consent, and fraud by the attorney Shapiro in inserting in the assignment the covenant to return the money paid.

The fifth defense alleges the facts set forth in the amended complaint and further alleges that the defendant Laruffa failed and neglected to deliver a good and sufficient deed of the premises in question to the defendant Kroopf or to plaintiff, as provided in the contract between him and the defendant Kroopf, and that whatever rights, title, interest or property the defendant Kroopf had or possessed in the contract between her and Laruffa, and in the premises in question, reverted to the defendant Walfish and to the plaintiff and that they were subrogated and succeeded to the rights of the defendant Kroopf in said contract; that if, by reason of the default of Laruffa and the defendant Kroopf, the defendant Walfish is liable for plaintiff's damage, the latter will be damaged in a like amount and that Laruffa and Kroopf are liable to the defendant Walfish. It is further alleged that in the agreement between Laruffa and Kroopf it was provided, among other things, that all moneys paid on account for the purchase of said premises and for the reasonable expenses for examination of title were made liens thereon and that, by reason of the advancements and payments of money, the plaintiff and this defendant and the defendant Kroopf have a lien upon the said lands for such moneys.

The sixth defense alleges in substance that the defendant Kroopf has commenced an action against the defendant Laruffa to recover damages by reason of the breach of said contract by Laruffa and that said action is still pending and undetermined, and that this breach of said contract is the same for which the plaintiff in the present action seeks to recover damages and that the cause of action in the amended complaint herein and in the complaint in the action of Kroopf against Laruffa arise out of and relate to the same transaction and affect the same premises, and that the two actions should be tried at once and at the same time and consolidated so that the rights of all parties can be finally and fully determined in one action.

This answer demands judgment that the amended complaint be dismissed or that, if it be found that plaintiff is entitled to recover, it be decreed that the moneys advanced by plaintiff and this defendant and the defendant Kroopf be declared a lien upon the premises in question and that such lien be foreclosed, etc.

The defendant, upon learning of the discontinuance of the action as against Laruffa and the cancellation of the *lis pendens*, moved for an order vacating the order of discontinuance, etc., or, in the alternative, for an order that the said Laruffa be made a party defendant to this action, etc. This motion resulted in the order appealed from.

This appeal presents an extremely novel and interesting question. That question is whether the assignee of a purchaser under a contract for the sale of lands, whose vendor is the purchaser of the same lands under a contract from the holder of the legal title, may have a vendee's lien upon the premises for the payment made on account of the purchase price. To present the situation in its simplest form, the facts alleged are that Laruffa made a contract with Kroopf to sell the premises in question. Kroopf, instead of assigning this contract, made a new contract with the defendants Sherwood and Friedman, who assigned the latter contract, and, by other mesne assignments, the plaintiff acquired the same. Laruffa defaulted in the performance of his contract because his wife refused to join in the deed. Consequently, Kroopf also defaulted in her contract, and, of course, the plaintiff is entitled to recover the amount paid and the expense of examination of title from Kroopf, and also from the defendant Walfish by reason of his covenant to return the consideration received for his assignment to plaintiff's attorney if the title proved unmarketable unless he establishes his second and third defenses. Is the plaintiff also entitled as well to a vendee's lien, and, if so, is the defendant Walfish entitled to a similar lien in the event of plaintiff's recovery under his contract above referred to? I think that, if plaintiff is entitled to a vendee's lien, the defendant Walfish is entitled to such a lien, if he is compelled to pay plaintiff under his covenant. In other words, having satisfied plaintiff's claim, Walfish would stand in the same position as though he were the assignee of the Kroopf contract.

The question presented by this appeal does not seem to have been previously determined by the courts of this State. Prior to the decision by the Court of Appeals in *Elterman* v. *Hyman* (192 N. Y. 113), the question as to whether a vendee could have a lien on the premises for the amounts advanced by him on the contract in the absence of some special equity, was involved in some con-

fusion. That case, however, finally settled the question in favor of such a lien, reviewing numerous authorities on the subject both in this country and in England, the court saying: " Whether the foundation of the lien is natural equity, imputed intention, partial ownership, the implication of a trust, or a blending of some of these sources, the authorities, almost without exception in those jurisdictions which give a lien to the vendor, are clear that one exists. As the vendor has a lien because he owned the land but conveyed prematurely and the vendee ought not to keep it without paying for it, so, as it seems to me, the vendee has a lien because he has paid for the land pursuant to contract, and as he cannot get the land, he has a right to get out what he put in on the faith of the land. The lien springs from the trust under which the vendor, as the legal owner, holds the land for the vendee, the equitable owner. Part payment creates partial ownership, and the vendee has an interest in the land itself to the extent of the payments made thereon. The contract and payment in full make him the equitable owner of all the land. The contract and payment in part make him the equitable owner *pro tanto.* When the vendor cannot convey, the equitable owner, wholly or in part, may assert his rights in a court of equity to get out of the land what he paid on it. If the vendor is not the absolute owner, the lien of the vendee ' exists only to the extent of the vendor's interest,' which in this case is only that of a sub-purchaser. (*Aberaman Iron Works* v. *Wickens,* L. R. [4 Ch. App.] 101; Fry on Specific Performance [3rd Am. ed.], 660.) The right is correlative to that of the vendor conveying without payment. In either case the *res,* or the subject of the contract, is the land, and whatever is paid on the land without corresponding conveyance, or conveyed without corresponding payment, is a lien on the land by virtue of parting with money on the faith of the land, or with land on the faith of the promise to pay for it. Payment is not made on the credit of the vendor, but on the credit of the land, and the purchaser's money, in equity, is converted into land, or attached to it as a lien. The equitable ownership, when specific performance cannot be had, is converted into money by a judicial sale of the vendor's interest, which in effect is the foreclosure of an equitable mortgage."

In. *Hugel* v. *Habel* (132 App. Div. 327) it was held that where a contract for the sale of lands is assigned by the vendee, his assignee, on breach by the vendor, is not entitled to a judgment impressing a lien for earnest money paid by the original vendee and for the expenses for examination of title and for damages, unless there is a specific agreement of novation by which the three parties agree that the assignee is to take the place of his assignor, and this not-

withstanding the original contract of sale was to bind the heirs, executors, administrators and assigns of the respective parties.

The respective rights of a vendor of real property and the vendee's assignee have also been involved in considerable confusion by the authorities. It was, at one time, held by various cases that a vendor could not maintain specific performance against the vendee's assignee. (*Forbes* v. *Reynard*, 46 Misc. 154; *Suydam* v. *Dunton*, 84 Hun, 506; *Champion* v. *Brown*, 6 Johns. Ch. 398; *Adams* v. *Wadhams*, 40 Barb. 225; *Hugel* v. *Habel*, *supra.*)

It was also further held by some cases that, by reason of this principle, the vendee's assignee could not have specific performance against the vendor. (*Genevetz* v. *Feiering*, 136 App. Div. 736; *Schuyler* v. *Kirk-Brown Realty Co.*, 193 id. 269; *Dittenfass* v. *Horsley*, 177 id. 143; affd., 224 N. Y. 560.) But in *Epstein* v. *Gluckin* (233 N. Y. 490) the Court of Appeals finally determined that an assignee of a vendee might enforce performance by the vendor, and we held in *H. & H. Corporation* v. *Broad Holding Corporation* (204 App. Div. 569) that a vendor might have specific performance against the vendee's assignee where the assignee had, before suit, demanded performance. In my opinion in that case I said: " In my opinion the doctrine which denies to a vendor the right to enforce performance by the vendee's assignee where such assignee has before suit demanded performance, cannot coexist with that laid down in the case last cited. [*Epstein* v. *Gluckin*, 233 N. Y. 490, revg. 193 App. Div. 906, which reversed 109 Misc. 184.] The obligations of the plaintiff as assignee go hand in hand with the benefits. Having become the assignee in order to compel performance, it thereby subjected itself to the duty of performance. If an assignee of a vendee may compel performance in equity, a reciprocal remedy in the vendor is enforcible against the assignee."

Prior to the decision handed down by the Court of Appeals in *Epstein* v. *Gluckin* (*supra*), the theory upon which an assignee of a contract for the purchase of real property was refused specific performance was that, because the vendor could not compel performance by the assignee, there was no mutuality of remedy, and, therefore, the assignee could not maintain specific performance against the vendor. The Court of Appeals, however, in *Epstein* v. *Gluckin* (*supra*) held the contrary, that specific performance was available " to assignee as to assignor " and that " what equity exacts to-day as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant," and that " mutuality of remedy is important in so far only as its presence is essential to the attain-

ment of that end." In that case the Court of Appeals said: " The assignee of such a contract succeeds by force of the assignment to the position of the original vendee as ' the equitable owner ' of the subject of the sale (*Lenman* v. *Jones*, 222 U. S. 51, 54; cf. *Elterman* v. *Hyman*, 192 N. Y. 113, 119, 120). Equity, while recognizing his right, will not leave him powerless to vindicate it, by withholding the equitable remedies without which the right is ineffective. The anomaly is not presented of a trust which equity establishes, but refuses to enforce. Assignee and assignor alike, upon fulfillment of the agreed conditions, may have the aid of the court in converting the equitable right into a legal estate. For this, the precedents are ample (*Lenman* v. *Jones, supra; Seaman* v. *Van Rensselaer*, 10 Barb. 81; *Dodge* v. *Miller*, 81 Hun, 102; *Murphy* v. *Marland*, 8 Cush. 575; *Corbus* v. *Teed*, 69 Ill. 205; 2 Story's Eq. Juris. sec. 1024). In such an exercise of jurisdiction, there is no risk of hardship or injustice to the vendor. The assignee by the very act of invoking the aid of equity, assumes the duty of performance, and subjects himself to any conditions of the judgment appropriate thereto (*Catholic F. M. Society* v. *Oussani*, 215 N. Y. 1, 8; *Consol. Fruit Jar Co.* v. *Wisner*, 110 App. Div. 99; affd., 188 N. Y. 624; *Goldthwait* v. *Day*, 149 Mass. 185, 187; *Martin* v. *Mitchell*, 2 Jac. & W. 413, 427). At first the vendor had the obligation of the vendees, and of no one else. The obligation thus imposed has not been lost, but another has been added. Some one has at all times been charged with the duty of performance. The continuity of remedy is unbroken from contract to decree."

Analyzing the rights and interests of a vendor and purchaser and the purchaser's assignee or vendee, there are certain propositions which seem to be definitely settled. The purchaser, under a contract for the sale of land, becomes the equitable owner of the land. Although the vendor retains the legal title until the performance of the contract by the purchaser, he holds the same in trust for such purchaser. Such purchaser has an equitable lien upon the property to secure the amount paid by him on account of the contract. The purchaser may also maintain specific performance against the vendor, and the assignee of the purchaser has the same remedy against the vendor. Likewise, the vendor may enforce performance by the purchaser's assignee. These propositions are now settled law in this State, except perhaps the last, and that, of course, has not been passed upon by the Court of Appeals, but has been determined so far as this court is concerned.

Applying these principles to the facts presented in the case at bar, the defendant Kroopf acquired, under her contract with

Laruffa, the equitable title to the land in question. She also had an equitable lien for any payments made by her on the purchase price. When she made her contract for the sale of the same lands to Sherwood and Friedman, the latter became the equitable owners of all her interest in the land and they had the right to maintain specific performance against her or to recover the payments made by them on that contract and were also entitled to an equitable lien extending to her interest in such land. (*Elterman* v. *Hyman, supra.*) It seems to me that this contract between Kroopf and Sherwood and Friedman operated to transfer to them all her rights and interest in the property and in her contract with Laruffa to the same extent as though the original contract itself had been transferred to them by assignment. If this is correct, the various mesne assignments to plaintiff transferred to him the same rights. In other words, the defendant Kroopf, having the right to recover from Laruffa her payments on the contract and to impress a lien upon the property therefor, the same right passed to her vendees under her contract with them. This would seem to be so because Kroopf is certainly entitled to such a lien, and Sherwood and Friedman, her vendees, have a similar lien to the extent of her interest in the property. She may, therefore, maintain an action to impress the property with such a lien against Laruffa, and her vendees Sherwood and Friedman and perhaps their assignees may maintain a similar action against her. Why may not equity avoid this circuity of action by permitting the ultimate purchaser to maintain the action against the original vendor? There has been no direct determination of the question as to whether the assignee of the vendee is entitled to a lien upon the land for payments made on the purchase price, but in *Flickinger* v. *Glass* (222 N. Y. 404) it was held in substance that where the owner of a farm contracted to sell it to plaintiff's assignor and take in part payment a stock of merchandise of an agreed value which was delivered before the time of closing the sale, and upon breach of the contract by the vendor, plaintiff's assignor made an assignment of his cause of action and of any equity in the land to plaintiff, plaintiff was entitled to such a lien. It appeared further in that case that, notwithstanding the assignment, the vendee sued in his own name and obtained a judgment for the value of the merchandise which he assigned to plaintiff, but which was reversed upon the ground that he was not the real party in interest, and the real question determined in that case was as to whether there had been an election of remedies with the result that plaintiff had lost both his judgment and his lien, and the Court of Appeals held that he had not. While the question at bar, therefore, was not raised

**528** EPSTEIN *v.* KROOPF.

in that case, it would seem that an assignee of the contract from the vendee would stand in the same position as the assignee of the cause of action after breach and of the equity in the land, because I think an assignment of the contract would assign any cause of action arising from its future breach as well as the estate in the land. But, in any event, as *Epstein* v. *Gluckin* (*supra*) holds that an assignee may have specific performance against the vendor, it would seem to result logically that he would be entitled to a vendee's lien. In my opinion, therefore, the assignee of a contract for the purchase of land is entitled to such a lien for the amount paid to the vendor on account of the purchase price.

But this does not solve the problem before us. It remains to consider whether a subpurchaser or a purchaser from the vendee under a new contract stands in the same position as an assignee of the contract and is entitled to a similar lien. Of course, it may be argued that the vendor made his contract with the original vendee and not with the vendee's purchaser and is not, therefore, obligated to the latter. This is, however, no more than what was held by the learned Special Term and by *Hugel* v. *Habel* (*supra*), that since there was no privity of contract between the vendor and the purchaser from the vendee, there was no obligation on the part of the former to the latter. But in view of the decision in *Epstein* v. *Gluckin* (*supra*), which entirely upset the preconceived view as to the right to specific performance by the vendee's assignee, I am by no means sure that there exists no such privity of contract as to entitle a subpurchaser to performance by the vendor of his contract, or, if not, that the subpurchaser's lien depends upon such privity. In the first place, I think that there is little distinction in principle between an assignment of contract and a subpurchase of the land. Both, in my opinion, effect the same result and operate to transfer to the assignee or the subpurchaser, as the case may be, the original vendee's equitable interest in the land, and, therefore, I think the contract by the vendee with the subpurchaser operates to assign the vendee's interest in the original contract between vendor and vendee to the same extent as though it were an assignment of the contract instead of a new contract of purchase. The only real difference between an assignment and a subpurchase is that, under the latter, the subpurchaser acquires the right to hold the vendee under the new contract which he would not have obtained by a mere assignment. In this view, it may be said that there is privity of contract between plaintiff and the defendant Laruffa.

But it will be noted that in *Elterman* v. *Hyman* (*supra*, 125) the court used this language which I have quoted above: " If

the vendor is not the absolute owner, the lien of the vendee ' exists only to the extent of the vendor's interest,' which in this case is only that of a sub-purchaser," citing *Aberaman Iron Works* v. *Wickens* (L. R. [4 Ch. App.] 101).

The facts concerning the relations of the parties in *Elterman* v. *Hyman* (*supra*) do not very distinctly appear in the case as reported in 192 New York, 113, but they do appear in the report of the same case in the Appellate Division after the new trial which had been ordered by the Court of Appeals (141 App. Div. 208). It appears that a contract was made between plaintiff and defendant for the purchase of certain lands. The defendant, at the time of the making of this contract, was not the owner of the premises, but merely had a contract for its purchase with another. The title tendered by defendant was rejected by plaintiff as unmarketable, and the suit was brought to impress a lien upon plaintiff's interest for the amount paid on the purchase price. The court said: " The material facts as to whether this action could be maintained in equity were the same in the record on the former appeal as in the record now before the court, and it must, therefore, be assumed that notwithstanding the fact that the defendant did not have title at the time the contract was made and at the time the action was commenced, the plaintiff had a lien upon the interest of the defendant in the premises under his contract which was enforcible in equity. * * * If the defendant offered to endeavor to remove the objections and requested time therefor, and this was refused, and the defendant afterwards took title and before the trial obviated the objections in this regard, it is quite likely that a court of equity would refuse to decree a lien or judgment in favor of the plaintiff and would enforce specific performance at the instance of the defendant. That, however, is not the case at bar; here the defendant not only did not tender title in accordance with his contract, but he has never acquired title. * * * It would seem, therefore, that the plaintiff was entitled to maintain the action as one in equity, although equitable relief cannot now be awarded, for the reason that the defendant has not taken title and has doubtless lost all his rights under his contract. Under the well-settled rule, equity may retain jurisdiction and award a money judgment."

The facts in that case, however, are different from those in the case at bar because, there, the vendee in the original contract had evidently by default lost any right to enforce performance and his equitable interest in the land, nor was any lien sought as against the original vendor who was not a party to the suit. Here, however, the vendee in the original contract, Kroopf, has not made default

34

under her contract with Laruffa and is still entitled to performance by him and still retains her equitable interest in the land. It is the vendor Laruffa who has defaulted by being unable to give good title and the vendee Kroopf, therefore, is entitled to a lien for the purchase money paid.

As I have already observed, the question whether Kroopf's assignees of her subcontract have a lien for this purchase money may not depend upon any privity of contract between the vendor and the subpurchaser, but may be governed by their respective rights and interest in the land. In other words, although there may be no privity of contract, there would seem to be a privity of estate. I haev been unable to find any authority in this State upon this subject, but it is laid down in Cyc. that, as a general rule, the assignee of a contract for the sale of land acquires all the rights of his assignor (39 Cyc. 1668), also that the purchaser of the interest of the original purchaser under an executory contract of sale acquires all the rights of the original purchaser, and that there is a privity of estate as between the vendor and the second purchaser of land. (39 Cyc. 1677.)

If my reasoning is correct, it results that whoever holds the equitable title to land by assignment of the purchaser's contract therefor, or through a subpurchase, may enforce the original contract against the original vendor, the holder of the legal title in trust for his benefit, and, upon such vendor's default, has a lien upon the land for the purchase money paid, to the extent of the original vendee's equitable interest therein. If the defendant Walfish establishes by proof the facts alleged in his fifth defense, he will be entitled to a vendee's lien to the extent above indicated and Laruffa is, therefore, a necessary party.

The order should be reversed, with ten dollars costs and disbursements, and the motion to vacate the order of discontinuance and canceling the *lis pendens* be granted, with ten dollars costs.

KELLY, P. J., JAYCOX, MANNING and KAPPER, JJ., concur.

Order denying motion to vacate an order discontinuing the action as against defendant Laruffa, and to cancel the *lis pendens* filed therein reversed upon the law, with ten dollars costs and disbursements, and motion to vacate order of discontinuance and to cancel *lis pendens* granted, with ten dollars costs.