Edward V. **ENGEL** and John M. Cavalier, Plaintiffs,

v.

The **TINKER NATIONAL BANK** et al., Defendants.

No. 64 Civ. 485.

United States District Court
E. D. New York.

May 25, 1967.

Henry Weinberger, New York City, for plaintiffs.

Joseph P. Hoey, U. S. Atty. for Eastern Dist. of New York, for defendant United States; Cyril Hyman, Asst. U. S. Atty., of counsel.

Edward J. Gunnigle, Port Jefferson, N. Y., for defendant Tinker Nat. Bank; J. Timothy Shea, Port Jefferson, N. Y., of counsel.

Meyer & Wexler, Smithtown, N. Y., for defendant Louis Traub, d/b/a Cinder Supply Service; Leonard D. Wexler, Smithtown, N. Y., of counsel.

## OPINION

WEINSTEIN, District Judge.

This case, involving liens and priorities on real property, was removed to this court from the New York Supreme Court, Suffolk County, on the petition of the United States. See 28 U.S.C. § 2410 (United States may be made party in State court action to quiet title) and § 1444 (removal to Federal court of action brought against the United States pursuant to § 2410).

## I. FACTS

The basic document is an unrecorded conditional sales contract for two small houses in Selden, New York. It was executed on December 1, 1957 by plaintiffs (hereafter sometimes referred to as the contract vendees) and defendant Zimmerman (hereafter referred to as the contract vendor).

Contract vendees agreed to make a $1,000 down payment and to pay the balance in equal monthly installments of $63.30 for a period of eight years commencing January 1, 1958, with the right to accelerated payments. They were required to pay taxes and assessments and to maintain specified insurance coverage. As is customary in this kind of conditional sale—a mode of acquiring real property not prevalent in this section of the country—a deed was not to be delivered until the final payment had been made.

Acting pursuant to the agreement exactly as would any purchasers of a new home, contract vendees, upon making their down payment, obtained the keys and entered into immediate possession. Each occupied one of the houses.

Their possession and occupation has been open and well known in the community continuously from December 1, 1957 to the present. Plaintiff Engel, working in conjunction with local contractors and a local bank, made substantial improvements; he added rooms, and installed fencing, heating, plumbing, electrical wiring and tiles. Plaintiff Cavalier installed a new roof. Each had a mail box with his name on it. They spent their weekends and vacations with their families improving and enjoying the premises. Beginning in July 1960 plaintiff Engel and his family made their house a permanent residence and the children attended local schools.

During the years when the contract vendees were regularly making payments and improving their homes, the contract vendor was increasingly beset by creditors, one of them being the United States. On December 1, 1958, the contract vendor

assigned her contract with the plaintiffs to defendant Tinker National Bank (hereafter referred to as the bank) as collateral security for loans then in default. As consideration for the extension of additional credit, on June 24, 1959 she executed a quitclaim deed to the defendant bank. The deed was recorded on June 26, 1959.

In compliance with a demand that all further payments pursuant to the contract be made to the bank, the contract vendees paid their regular monthly installments to the bank from July 1, 1959 through October 1, 1962. They then notified the bank that they wished to exercise their right to pay the balance due on the contract—which then amounted to $2,220.32—and to have the property conveyed to them. On the ground that the deed was held solely as collateral security and that it was unable to convey title, the bank refused to issue a deed.

Thereupon, on December 12, 1962, the contract vendees instituted an action in the New York Supreme Court, Suffolk County, against the bank seeking specific performance of their contract. That court, in an opinion by Tasher, J., denied plaintiff's motion for summary judgment without prejudice on the ground that the judgment creditors and lienors of the contract vendor "should be joined as parties defendant and the various priorities and interests litigated in a single action." Engel v. The Tinker National Bank, Supreme Court, Suffolk County, Index No. 97063. The court cited with apparent approval an earlier County Court decision involving the contract vendor, contract vendees, bank, and a judgment creditor of the contract vendor which had characterized the bank's interest as a "collateral mortgage to secure a debt." Brown Brothers Contractors, Inc. v. Carroll Material Corp. et al., County Court, Suffolk County, Index No. 73833–1961.

In April 1964, plaintiffs amended their complaint in the Supreme Court action and joined additional defendants. The defendants are shown on the table below with the nature and amount of the claims against the contract vendor and their position in this court. In May 1964, on motion of the United States Attorney, the action was removed to the United States District Court for the Eastern District of New York.

## TABLE OF DEFENDANTS' CLAIMS

| Date | Defendant | Amount | Nature of claim | Position in this action |
|---|---|---|---|---|
| 5/20/57 | Long Island White Trucks | $4,000.00 | mortgage entered into (apparently satisfied) | defaulted |
| 2/10/59 | Valley Stream National Bank & Trust Co. (Assigned to United States 11/59) | 997.14 | judgment docketed | appeared at trial |
| 6/24/59 | Industrial Commissioner of New York | 213.63 | lien docketed | appeared but waived notice of all proceedings except sale |
| 6/26/59 | Tinker National Bank | 568.00 | deed recorded | appeared at trial |
| 8/12/59 | Eichacker, Walter | 76.70 | judgment docketed | defaulted |

| Date | Defendant | Amount | Nature of claim | Position in this action |
|---|---|---|---|---|
| 9/25/59 | New York State Tax Commission | 919.73 | lien docketed | appeared but waived notice of all proceedings except sale |
| 1/13/60 | New York State Tax Commission | 400.00 | lien docketed | appeared but waived notice of all proceedings except sale |
| 1/25/60 | John T. Mather Memorial Hospital | 331.88 | judgment docketed | defaulted |
| 6/13/60 | Louis Traub d/b/a Cinder Supply Service | 1,101.74 | judgment docketed | appeared at trial |
| 9/27/60 | Royal Indemnity Co. | 709.39 | judgment docketed | defaulted |
| 4/21/61 | Brown Brothers | 4,600.77 | judgment docketed | appeared in action but wished to discontinue; did not appear at trial |
| 7/6/61 | Cooper Tire and Rubber | 771.09 | judgment docketed | appeared but waived notice of all proceedings except sale |
| 9/28/61 | Industrial Commissioner of New York | 80.20 | judgment docketed | appeared but waived notice of all proceedings except sale |
| 10/5/61 | United States | 378.07 | tax lien docketed | appeared at trial |
| 2/21/62 | United States | 728.45 | tax lien docketed | appeared at trial |
| 4/27/62 | Makousky Bros. | 2,783.41 | judgment docketed | appeared but waived notice of all proceedings except sale |
| — | Dorothy C. Zimmerman | — | contract vendor | defaulted |

## II.  LAW

To unravel this tangle, it is necessary to consider plaintiffs' position with respect to all the defendants and the defendants' rights vis-á-vis each other. New York Law governs all priorities except those arising from United States tax liens which are controlled by federal statutes. Under the law of both jurisdictions, plaintiffs' rights are superior to those of defendants.

## A.  NEW YORK LAW

Upon execution of the contract and payment in part, a contract vendee becomes "equitable owner *pro tanto*" of the property he contracts to purchase. Elterman v. Hyman, 192 N.Y. 113, 125, 84 N.E. 937 (1908).  The lien of the judgment creditor "is subordinate to this outstanding equitable interest."  3 Powell on Property ¶ 479 (1966).  See also id. at ¶ 450.  Even without recording, the rights of a contract vendee are superior to all except bona fide purchasers for value—a category into which judgment creditors do not fall.  Ledsal Realty Corporation v. Demkin, 141 N.Y. S.2d 686 (Sup.Ct.1955).

The bank's rights would be subservient to plaintiffs' equity even if the bank had not had actual knowledge of plaintiffs' interest.  Phelan v. Brady, 119 N.Y. 587, 23 N.E. 1109, 8 L.R.A. 211 (1890) (mortgagee *without notice* denied right as against unrecorded purchaser in possession of tenement).  A long, unbroken line of New York cases has held that a vendee in possession has rights superior to a subsequent purchaser *without actual knowledge* on the theory that possession gives constructive notice of a contract vendee's rights. Moyer v. Hinman, 17 Barb. 137; 13 N.Y. 180 (1885).  See N.Y.Law Rev. Commission Study, Possession of Land as Notice of Unrecorded Interest of Person in Possession, 561–71 (1959).  Although this rule has been criticized as "an *anachronism which lost its excuse for existence when the recording system was introduced*" (Report of Committee on State Legislation of the Association of the Bar of the City of New York, Report No. 61, Bulletin No. 4, p. 194 (1956)), it remains the law of New York.  Repeated legislative attempts to limit protection of the contract vendee in possession have failed.  See, e.g., N.Y. Law Revision Commission, Recommendation Relating to the Effect of Possession of Real Property as Notice of Interests Claimed by the Person in Possession, pp. 555–56 (1959); N.Y.Law Revision Commission Report, pp. 19–21 (1960).

So strong is New York's policy favoring the contract vendee in possession that he can continue to make payments to the contract vendor despite subsequently filed judgments and liens unless the judgment creditors diligently take affirmative action to enforce their rights against these payments under article 52 of the New York Civil Practice Law and Rules.  As the New York Court of Appeals noted in the leading case of Moyer v. Hinman, 13 N.Y. 180, 183–84 (1855):

" * * * the docketing of a judgment against the vendor affords no notice of its existence, either actual or constructive, to the prior vendee of the judgment debtor.  * * *  [I]t may be said, a party holding a contract upon which payments remain to be made, may, before making such payments, examine for judgments against the vendor; but it would be an intolerable inconvenience to require this, where the payments, as is usually the case, are to be made annually or oftener; and should such examination ever be strict, the vendee would have to run the risk of an incumbrance intervening, while he was going from the office where the search was made to the residence of the vendor, to make the payment.  It has been repeatedly decided that the docketing of a judgment or the recording of a mortgage is no notice to a prior purchaser. * * * "

The United States contends that any payments heretofore made to the contract vendor—and implicity to the vendor's assignee, the bank—are not entitled to receive any priority over the government's judgment (assigned to it by Valley Stream National Bank & Trust Co.) subsequent to the docketing of such judgment.  However, "New York law is to the contrary."  Leipert v. R. C. Williams & Co., 161 F.Supp. 355, 359 (S.D.N.Y. 1957).  The reasons for the New York rule are set forth in Moyer v. Hinman, quoted above.  See also Trustees of Union College v. Wheeler, 61 N.Y. 88, 108–109 (1874).  With respect to this

judgment lien the government cannot sit back and wait while such payments are made and received in good faith and then retroactively upset conditions which resulted from its quiescence.

## B. FEDERAL LAW

■ Under applicable federal law, contract vendees such as plaintiffs have rights superior to the tax liens of the United States, although this has not always been the case. In Leipert v. R. C. Williams & Co., 161 F.Supp. 355 (S.D. N.Y.1957), an apposite case, the court held that although contract vendees' rights under unrecorded contracts were superior to those of creditors with subsequently docketed judgments, the United States tax liens were entitled to a priority. The court's opinion was based upon the fact that contract vendees who had not received deeds did not qualify as "purchasers" within the meaning of Section 3672 of the 1939 Internal Revenue Code. Consequently, they were unprotected against subsequently filed tax liens.

The Federal Tax Lien Act of 1966 has changed the result of the Leipert case. It redefined "purchaser" to include one who has entered into a written executory contract to purchase property, provided he thereby "acquires an interest (other than a lien or security interest) in property which is valid under local law as against subsequent purchasers without actual notice." 80 Stat. 1125, Sec. 101, I.R.C. Sec. 6323(h) (6). A tax lien is "not * * * valid * * * against any purchaser * * *" until notice has been filed. 80 Stat. 1125 Sec. 101, I.R.C. Sec. 6323(a). The 1966 lien provisions apply to the present United States tax liens since, in the words of the statute, the government tax lien "has [not] become final by judgment, sale, or agreement before the date of enactment of this Act." 80 U.S.Stat. 1125, Sec. 114(b)(1).

Two issues are posed by the new definition of "purchaser." First, is the contract vendees' interest superior to that of subsequent purchasers without knowledge? Second, is the interest of the vendees one other than a lien or a security interest? As noted above, New York law gives a contract vendee in possession a priority over purchasers without knowledge even in the absence of recording. The second question is somewhat more troublesome.

In the Leipert case, the court, after stating that "the plaintiffs did not become purchasers within Section 3672," continued by noting that "all the plaintiffs acquired [was] a vendee's lien as of the time the contracts were executed." Leipert v. R. C. Williams & Co., supra at 358. Leipert, however, involved contracts which specifically characterized the relationship between the parties as that of landlord and tenant. In the absence of such a clause, the contract vendee has more than a mere right to repayment. His interest "springs from the trust under which the vendor, as the legal owner, holds the land for the vendee, the equitable owner." Elterman v. Hyman, supra, 192 N.Y. at 125, 84 N.E. at 942. Furthermore, the court in Leipert, when speaking of a "lien," was using this term in contrast to "record title" which it regarded as crucial to a "purchaser's" rights under the then statute. Since the new Federal Lien Law defines "purchaser" to eliminate record title as the sine qua non, the analysis of the court in Leipert is no longer relevant.

■ The legislative history of the Lien Law of 1966 suggests that the term "lien" as used in the statute was not designed to include an interest such as plaintiffs'. Indeed, the amendments were intended to aid persons in plaintiffs' position. The Senate Report states that "The definition of the term 'purchaser' makes clear that a purchaser who has not taken title to, or fully paid for, property is protected." S.Rep. No. 1708, 89th Cong., 2d Sess. (1966). See also H.R.Rep. No. 1884, 89th Cong., 2d Sess.

12 (1966). As Plumb and Wright point out in their commentary on the recent statutory changes, "one who has entered into a *written* executory contract to purchase property, or who has obtained an option to purchase property, is given all the protection of a 'purchaser' with title." Practice Handbook on Federal Tax Liens, p. 66 (1967) (emphasis in original). See also Creedon, The Federal Tax Lien Act of 1966—An Historic Breakthrough, 4 Harv.J.Legis. 163, 177–78 (1967).

### III. REMEDY

At the trial, the parties sought a sale of the property. This remedy is entirely inappropriate in view of the existing rights of the plaintiffs and it is denied. See Federal Rules of Civil Procedure, Rule 54(c).

Since plaintiffs' interest is unaffected by the liens or judgments of any of the defendants to this action, upon payment of the remaining principal due under their conditional sales contract, with interest to date, they will be entitled to a judgment of specific performance of their contract. Such a judgment is recordable as evidence of title pursuant to section 297–b of the New York Real Property Law, McKinney's Consol.Laws, c. 50.

It is not necessary at this time for the court to decide whether the government's tax lien attached to the installment payments made to the bank. Cf. Plumb and Wright, Federal Tax Liens, pp. 238–39 (1967). The amount to be paid into the Registry of the Court exceeds the amounts of the tax liens.

Plaintiffs will pay into the Registry of the Court the remaining principal with interest at 5% (the amount fixed by the contract of sale). This money will be distributed on order of this court after hearing the defendants to this action who have not yet adequately established their priorities.

Settle order on notice.