FELDBLUM v. LAURELTON LAND CO.

(Supreme Court, Appellate Division, Second Department. May 17, 1912.)

1. VENDOR AND PURCHASER (§ 334*)—CONTRACTS—RECOVERY OF PARTIAL PAYMENTS MADE—GROUNDS.

A land development company owning a large number of lots began to market them, and, as a part of its method, it advertised certain advantages which it would give to the property in the way of grading and build-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing streets, sidewalks, trees, shrubbery, gas, water, and a clubhouse with a garage. A purchaser attracted by the advertisements contracted to purchase lots for a partial payment and monthly installments. Before the execution of the contract, there was indorsed on the back of it a memorandum relating to the grading and paving of the streets, and the making of the sidewalks, and provided that a railroad station would be completed and 25 houses and a clubhouse in course of construction or completed during the next 12 months. The purchaser made monthly payments for five years without any substantial compliance by the company of its agreement. He made complaints from time to time because of such failure. *Held*, that the purchaser was entitled to recover the payments made because of the company's breach of its part of the contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

2. VENDOR AND PURCHASER (§ 338*)—BREACH OF CONTRACT—REMEDY OF PURCHASER—LIEN FOR PRICE.

A purchaser contracting for the purchase of land on specified conditions to be performed by the vendor, and making partial payments of the price, may sue in equity to adjudge and enforce a lien for the amount paid, where the vendor is unable to give a marketable title, or where the contract of sale is broken by him either deliberately or from neglect.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 991–993; Dec. Dig. § 338.*]

Appeal from Special Term, Queens County.

Action by Adolph Feldblum against the Laurelton Land Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

C. E. Thornall, of New York City, for appellant.
Adolph Feldblum, of New York City, for respondent.

PER CURIAM. The defendant appeals from a judgment of the Special Term in Queens county which adjudged that the plaintiff had a vendee's lien on certain real estate situated in said county, and decreed the foreclosure thereof. The defendant is a land development company, which owned a tract of land in Queens county, comprising about 4,000 lots. It started out to market these lots, either for cash or by sale on the installment plan. As a part of its method of marketing these lots, it advertised certain advantages which it was to give to the property in question in the way of grading and building streets, cement sidewalks, trees, shrubbery, gas, water, and, as the crowning cap of all, the building of a large clubhouse with a garage for the use of the people who might buy and settle at the place in question. The plaintiff, attracted by these advertisements, entered into negotiations with the agents of the defendant for the purchase of several lots on the installment plan. A contract in writing was made between them, covering some eight lots, the purchase price being $5,670, on which 10 per cent. was paid down, and the balance was to be paid in monthly payments at the rate of $113 each month. Before the execution of the contract, there was indorsed upon the back of it a memorandum relating to the grading and the paving of the streets,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the making of sidewalks, etc. This memorandum contained a clause as follows:

"It is further agreed that the railroad station will be completed and twenty-five houses and the club house in course of construction or completed during the next twelve months."

[1] The contract was signed on October 1, 1906. The railroad station and clubhouse referred to in this memorandum were the things referred to in the public advertisements of the defendant. The plaintiff began making his payments from month to month until he had paid in altogether the sum of $5,539. The defendant, however, did not complete its agreement as to the making and paving of the streets, and the putting in of gas and water, nor in the building of the railroad station, nor in the building of the number of houses specified, nor in the starting and completion of the clubhouse within the time specified in the memorandum on the back of the contract. The plaintiff made complaints from time to time as to this failure on the part of the defendant, but apparently without any result. In February, 1911, he brought this action to establish a breach of the agreement on the part of the defendant, and to have adjudged upon the land in question a lien for the moneys which he had already paid on his part in performance of the contract. Before the case came to trial, a number of new houses were built, and a railroad station was erected, but at the time of the trial not all of the specified number of houses were completed and the clubhouse had not been begun at all, and there was an issue as to the number of streets which had been improved, which was found in favor of the plaintiff.

It seems to us that the plain equities of this case are in favor of the plaintiff. In view of the large number of these land-developing companies and the enticing promises which they hold out to intending purchasers, there can be no question that these promises are an integral part of the transaction of sale between the parties where, as in this case, a special memorandum referring generally to these matters was indorsed upon the contract before it was executed and delivered, thus making these matters a part of the transaction of sale. Here the plaintiff was paying in his money for five years, without any substantial performance on the part of the defendant of the promises which induced the making of the contract between it and him. If he can be helped out in equity, we see no reason why the assistance of the court should not be given to him. The trial court filed no opinion, but doubtless the same view was in its mind.

The chief contention of the appellant is that the plaintiff has no standing in a court of equity to establish a vendee's lien, but should be confined to a remedy at law for damages for the breach of a collateral covenant. Numerous authorities are cited in the appellant's brief on this point, but, after examination, we do not find any exactly in point or covering a situation such as is here presented. Doubtless, if the deed had passed and the plaintiff had got title, he should be obliged to press his remedy for a breach of covenant in a court of law, but such is not this case. The contract between these parties did not call for a conveyance until a time nearly four years

after its making and delivery. The vendor, however, had obligated itself to do certain definite things in the meantime for the vendee. These things it had not done in the time specified, and some of them it had not attempted to do or shown any likelihood of doing before the time for actual conveyance had arrived. In this respect the case at bar differs in important particulars from that before this court in the First Department, in Hochstein v. Vanderveer Crossings, 134 N. Y. Supp. 950, decided April, 1912, and which was decided since the argument and submission of this appeal. There certain lots of land had been sold to a purchaser on the installment plan by a land development company, and the contract had indorsed upon it a memorandum as follows:

"It is agreed that the grading of Vanderveer Crossings, the filling in of the creek, the putting in of made roads, shade trees, and sidewalks shall be accomplished free to lot buyers within three years from April 2, 1906."

It turned out that the land company could not fill in the creek, as it had been adjudged that company did not have title to the bed of the creek. The purchasers refused to take title to the lots, and sued to recover damages for a breach of the contract of sale. It was held that they could not recover under the contract of purchase, but were restricted to an action for damages for a breach of the agreement to fill in the creek. The learned court based its decision upon the fact that under the contract between the parties the agreement to fill in the creek was not required to be performed until after the actual conveyance of the lots in question, and that, therefore, it was not a part of the contract of sale, but was an independent covenant to do something after title had passed and the contract of sale had been fully performed, and that for a breach of this independent covenant the only remedy was one for the damages which arose from said breach. In the case now at bar the agreement indorsed on the back of the contract of sale required performance of many important provisions at a time specified and which should occur several years before the time fixed for actual conveyance. Because of this feature we think the decision in the Hochstein Case does not apply to the question now before us.

[2] It is again contended most earnestly by the appellant that an action to establish a vendee's lien can be maintained only upon the vendor's inability to convey by reason of some defect in the title. This question, however, seems to be without any precedent to aid us. The right to maintain an action in equity to adjudge and enforce a vendee's lien has been considered quite at length, very recently, by the Court of Appeals in Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862, 15 Ann. Cas. 819, and in Davis v. Rosenzweig Realty Co., 192 N. Y. 128, 84 N. E. 943, 20 L. R. A. (N. S.) 175, 127 Am. St. Rep. 890.

We think that the principles governing the question of a vendee's lien apply not only to a case where the breach of the contract of sale arises from inability on the part of the vendor to give a marketable title, but apply likewise to a case where the contract of sale is broken by the vendor, either deliberately or from neglect. The vendee's

money has gone into the land, and the establishment of a lien in favor of the vendee is but following the moneys into the land and impressing the land itself but with the burden of the moneys so paid.

The judgment should be affirmed, with costs.