NATHAN HOROWITZ and AARON GORELICK, Plaintiffs, v. BERGEN ASSOCIATES, INC., Defendant.

Supreme Court, Richmond County, March 8, 1937.

*Herman Wolkinson* and *Emil Woldar* [*Adolph Feldblum* with them on the brief], for the plaintiffs.

*Carroll & Dutcher* [*Francis G. Hoyt* and *James J. Marett* of counsel], for the defendant.

MAY, J. Plaintiffs, the vendees in a contract with defendant vendor for the purchase of certain lots in a real estate subdivision, sue to recover back the moneys paid by them under the contract and for the establishment of a vendees' lien upon the lots in question. They also seek a reformation of the contract in certain respects, which the defendant does not oppose.

The issue involves questions both of fact and of law, and under both, in my opinion, plaintiffs are entitled to prevail.

The factual question involved is one of the performance by defendant of certain of its covenants for the improvement and development of the property. Preliminary to this, in turn, is presented an issue as to whether such covenants were actually part of the sales agreement between the parties, having been embodied in a writing physically separate from such sales contract. On this point I hold with the plaintiffs to the effect that the two writings, viz., said sales contract and the so-called " Improvement Guarantee Maintenance Contract," to which reference will hereinafter be made as the improvement contract, were connected writings and part of the one agreement. (*Jackson* v. *Dunsbagh*, 1 Johns. Cas. 91.) They were executed simultaneously on paper of similar and distinctive type and a perusal of the terms of the improvement contract leads unmistakably to the conclusion that it is to be read in connection with, and as part of, the sales contract. The plaintiffs are referred to therein as the purchasers of the described lots and the defendant as the seller thereof, and the improvement contract then reads: " Witnesseth: that the Bergen Associates, Inc., having agreed to make certain street and property improvements and for the purpose of exactly defining said improvements it is agreed," and then follows a recital of the specific improvements agreed upon, consisting of four numbered paragraphs, all of which are typed into the printed agreement, and one of which, the third, is in the form of a separate typewritten rider pasted on, tending to bear out plaintiff's claim that the nature of the improvements was a matter of more than passing moment to them and was carefully considered and discussed at the time of the purchase.

The improvement agreement then goes on to provide for the establishment of a fund by the contribution of two dollars a year by the purchaser on each lot purchased for a period of five years up to July, 1931, " in order that a fund may be created for the maintenance of the streets and the property in general, which shall be in addition to the improvements agreed to be installed by the seller and *which fund shall be expended as hereinafter provided.*" (Italics mine.)

The improvement agreement further provides that the purchaser is to make payment each year while the lot is being paid for " but the entire sum of ten dollars per lot shall be due and payable upon the delivery of a deed to the purchaser for any lot purchased by him."

The defendant contends that the agreement regarding the improvements on the property was the subject of a separate contract, and that the consideration for it was the two dollars a lot, or some thirty dollars in all, which the purchaser was to pay, and which sum it was conceded he did not pay.

Plaintiffs dispute this, and I think plaintiffs' contention is sound. The analysis of the language of the improvement agreement as aforestated, in my opinion, indicates that the seller regarded itself as obligated to make certain improvements, and only after these were made was the money contributed by the purchasers at the rate of two dollars a lot, to take effect for the maintenance of such improvements. Furthermore, from the clear language of the improvement agreement, such money, although it might have been paid yearly, was not in fact due and payable until the delivery of the deed.

Defendant contends that even if it be found that the improvements were to be made within the terms of the sales agreement, it has substantially performed. Giving all due weight to defendant's claim and proof in this respect and realizing the difficulties with which it was confronted, I find that it did not substantially perform to the extent that it was obligated to under its agreement and that plaintiffs have succeeded in establishing such a breach as under the circumstances justifies the rendition of a verdict in their favor.

There seems to be no doubt, as I weigh the proof adduced, that plaintiffs (or their assignor) considered that they were buying into what was or would be a residential development of the better type, and that the sales price was based in part on that consideration. While it may have been a hardship to the defendant, as aforesaid, because of the depression and incidental factors, to have proceeded with this development fully in accordance with plans projected in 1926 or prior thereto, it was equally a hardship on plain-

tiffs to find that their hope and expectation of buying into a well-planned, well-kept subdivision had resulted in something distinctly different from what they had contracted and paid for. No time was specified for the completion of the improvements which, under established rules of law, means that they should have been completed within a reasonable time. Plaintiffs assert that they should have been completed within the six and one-half year period during which their installment payments were to have run. The purchase was made in April, 1926. Such argument has force.

Defendant, among other things, agreed to lay water mains throughout the property but, except to a very minor degree, it has failed to do so. On or about June 19, 1935, three days before this case appeared on the calendar for trial, and more than nine years after the defendant contracted to make the improvements, the defendant laid a one-inch pipe in front of plaintiffs' lot. Such pipe, the testimony shows, was one-eighth of the customary size of pipes laid by the city for similar property. Obviously, this was, as is claimed, only a gesture inspired by the bringing of the instant suit. Defendant contends that other purchasers, who had actually built on their lots, had been furnished with eight-inch mains, and demands to know what purpose would have been served in laying through this vast tract eight-inch water mains which would have been rusting away for the past ten years and would by this time probably have had to be relaid.

The answer is that the defendant contracted to lay them. Plaintiffs evidently bought in expectation thereof, in part, and plaintiffs' plight, in so far as the development is concerned, might have been far different had defendant made good its promise in this and other respects. Performance not having been rendered impossible, the difficulty thereof does not excuse the promisor who bound himself to do the stipulated act. (*Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377.)

Plaintiffs, on the other hand, contend that whereas defendant " generously promised city water mains wherever required," the proof shows that houses up since 1926 on Adelphi street west of Eugene street still have private mains, for which defendant paid to Wood & Wood on September 15, 1925, the sum of about $351. Plaintiffs further argue that it would have been unfair to make them gamble on the continued solvency and willingness of the defendant to perform in this respect when, as witnesses for the defendant admitted, the city makes a charge for laying water mains to a building more than one hundred and fifty feet from the nearest water outlet; that if plaintiffs should want to sell their lots it would

be unreasonable to assume that a prospective buyer would be content with the record of a ten-year failure to perform on the part of the defendant; furthermore, that there can be no guaranty that the city's present policy with respect to installation of water mains will be continued and that it will not adopt a different policy. Further, plaintiffs argue that a one-inch pipe, such as finally laid by the defendant, will not service a fire hydrant, and that, in case of fire, particularly a fire originating in the brush near no water pipes at all, it would be necessary to bring the fire hose hundreds of feet to fight such fire; that the effect of this on insurance premiums and possible property damage needs no elaboration.

Defendant agreed that all streets would be surfaced with a cinder roadway, except two which were to be laid with macadam. Fifty per cent of the streets, however, have been neither cindered nor surfaced. (Defendant asserts that but twenty-five per cent of the streets are lacking in this respect, but it eliminates from its calculation Calcutta street.) · This was the improvement specified in the paragraph of the improvement agreement which was emphasized by being attached thereto by special rider.

Defendant asserts that it performed in excess of its agreement with respect to the streets actually surfaced, in that it laid macadam where it was not required to and several thousand feet of curbing, etc., but the measure of performance which the court must apply is that which the parties themselves had agreed to. It was for the plaintiffs to determine who was to them the inducement, and plaintiffs, having· determined it, the defendant accepted it, and nothing less than a substantial compliance therewith is of any avail.

Defendant agreed to lay sidewalks and, in this respect, it might be found that there was a substantial performance. Defendant likewise agreed to clear the property of brush which, at the time of the trial, stood ten feet or more on the property, and even existed within the bed of the streets. Defendant contends that a fair interpretation of this part of the agreement would be that it was obligated only to initially remove the brush and that it was contemplated that thereafter the purchasers in the development would co-operate in keeping the brush down and the shrubbery in shape. Were it not for the other items of improvement, it would not be unreasonable to concur with defendant in this interpretation.

But, even resolving these points in favor of the defendant, there is still·a wide gap between promise and performance with respect to other items, including, in addition to what has already been discussed, the installation of electricity. Defendant professed that it was willing. to proceed with such installation as rapidly as the

construction of houses demanded, and it might be argued that plaintiffs have sustained no injury by reason of defendant's failure to comply strictly with this part of its agreement, but such claim is problematical and leaves out of consideration the more advantageous position in which the plaintiffs might have found themselves had the development proceeded apace as evidently contemplated. It overlooks the argument, likewise, that the plaintiffs have been forced to gamble on defendant's continued solvency and willingness to perform this part of the contract.

I think that there has been a demonstrated failure on the part of the defendant to give to the plaintiffs what they agreed to purchase and that plaintiffs are entitled to receive back the consideration paid. I can see no essential difference between this and the case of *Feldblum* v. *Laurelton Land Co., Inc.* (151 App. Div. 24; affd., 210 N. Y. 594). Defendant seeks to distinguish such case on the ground that there time was expressly made of the essence, but it was so made here likewise (See paragraph third of the sales agreement); and defendant even failed to perform within a reasonable time. Defendant would further distinguish the *Feldblum* case on the ground that the memorandum therein made as to improvements was attached to and made a part of the sales agreement but, as I find and construe the contract herein, they were also integrated. The defendant would make a further distinction in that in the *Feldblum* case the court found the defendant guilty of deliberate breach or neglect. I think that the facts presented would sustain a similar conclusion herein.

On the other hand, I find that the case of *Brede* v. *Rosedale Terrace Co.* (216 N. Y. 246), offered by the defendant, is on its facts clearly distinguishable.

There is an additional factor herein which warrants judgment for the plaintiffs for the return of the payments made. This is to be found in paragraph seventh of the sales agreement wherein " the seller agrees to give and the purchaser agrees to accept a title such as the N. Y. Title & Mortgage Company will approve and insure. The seller further agrees to furnish without cost to the purchaser a policy of title insurance from said company upon delivery of the deed as hereinabove provided for." The New York Title and Mortgage Company has been liquidated and it is now beyond the power of the defendant to comply with this phase of its agreement. The inability is a vital defect. (*Tenner* v. *Retlaw Devel. Corp.*, [App. Term, 2d Dept.] 163 Misc. 248.) Defendant claims there was no proof that this company was insolvent on the " law day," but this statement overlooks the admissions of the pleadings.

Plaintiffs contend that defendant disabled itself from specifically performing its contract by conveying the property, including the lots in question, after suit herein was commenced. Defendant says that such conveyance was made subject to an agreement which fully preserved plaintiffs' rights, and that defendant has since regained title to the lots in question and has made a tender of a deed to same to plaintiffs in the instant suit.

I am of the view that the legal aspect of this situation, as asserted by the plaintiffs, is the correct one. (See Williston on Contracts [1920 ed.], § 878.)

I do not find, finally, that plaintiffs have waived performance, as defendant contends. Such plea, in any event, would scarcely avail defendant in the absence of a pleaded defense.

In view of the conveyance by the defendant as aforesaid, plaintiffs are entitled to a money judgment. Judgment given accordingly.